271 N.J. Super. 502 (1994)
638 A.2d 1354
RAYMOND HAWORTH, PLAINTIFF-APPELLANT,
v.
DEBORAH HEART AND LUNG CENTER AND BETSY SCHLOO, M.D. AND PETER WARD, INDIVIDUALLY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1994.
Decided March 10, 1994.
Before Judges BAIME and CONLEY.
*503 Russell Weiss, Jr., argued the cause for appellant (Carroll & Weiss, attorneys; Mr. Weiss and Robert J. Merryman, on the brief).
Vincent E. Gentile argued the cause for respondents (Cohen, Shapiro, Polisher, Shiekman and Cohen, attorneys; Mr. Gentile and Christina Woodward Strong, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
The Conscientious Employee Protection Act (N.J.S.A. 34:19-1 to -8) (CEPA) bars an employer from taking retaliatory action against an employee who "[o]bjects to, or refuses to participate in any ... practice which [he] reasonably believes ... is incompatible with a clear mandate of public policy concerning the public health, safety, or welfare." N.J.S.A. 34:19-3c(3). Plaintiff instituted this action contending that defendant Deborah Heart and Lung Center violated the statutory scheme when it discharged him from his position as blood bank supervisor because he intentionally destroyed certain blood samples. Plaintiff contended that his destruction of the blood samples was a communicative act designed to show his objection to, or refusal to participate in, defendant's allegedly defective blood identification practices. However, it is undisputed that plaintiff never informed any governmental or hospital accrediting agency of his concern for the integrity of defendant's blood sampling practices. Nor did he apprise anyone of his decision to discard the samples until the next day when he was questioned by a laboratory technician during a telephone call from his home. The Law Division found that plaintiff's destructive behavior, even if communicative, was not of a type protected by CEPA. The court granted defendants' motion for summary judgment. Plaintiff appeals. We affirm essentially for the reasons expressed by the Law Division.
We need not recount the facts at length. The blood collection and testing process at Deborah Hospital begins when patients scheduled to undergo surgery participate in a preadmission program *504 which includes drawing blood samples that are sent to the blood bank for a variety of tests. The blood type and antibody screening information gained during preadmission testing is used to assure that the hospital has an adequate supply of blood on the date the surgery is to be performed. The patient leaves the hospital after completing the preadmission procedures and returns several days later as an in-patient for surgery. After his admission, cross-match/compatibility testing is performed, generally the day before or on the day of surgery.
Prior to adoption of the procedure presently in place, a new blood sample was taken from the patient upon his admission for surgery. However, the drawing of blood is an invasive procedure and carries certain risks. In addition, it is often inconvenient for hospital personnel to take a blood sample after a patient's admission for surgery. Plaintiff thus devised a procedure where the patient's preadmission blood sample is stored in the blood bank and is subsequently retrieved when the patient is admitted for surgery. Although plaintiff admitted that the system worked well, he contended that understaffing and clerical problems caused him to reevaluate the procedure. Plaintiff never expressed his concern in writing to hospital officials. Nor did he apprise accrediting agencies of the pitfalls in the hospital's blood sampling practices, although he met various inspectors on several occasions.
Instead, after engaging in an argument with his supervisor on other subjects, plaintiff returned to the blood bank and, without telling anyone, took an entire rack of patient blood samples and tossed it into a waste bin. Blood samples for 15 patients, including infants, whose surgery was imminent, were destroyed. Both the destruction of the blood samples and failure to notify anyone violated the hospital's procedures. Plaintiff did not appear for work the next day. Following this incident, plaintiff, at the recommendation of his psychiatrist, took a seven week leave of absence, citing "stress" as the reason. He had taken two prior leaves of absence for the same reason.
*505 Defendant offered plaintiff a less stressful, but lower level job. Plaintiff refused and was then discharged or resigned. This suit followed.
We are in complete accord with the Law Division's holding that plaintiff's destructive act was not protected under CEPA. In reaching this conclusion, we nevertheless recognize and reaffirm New Jersey's strong public policy protecting employees from retaliation for reporting workplace safety violations or for otherwise exercising their legal rights. Wholly apart from CEPA, "[w]e have not been hesitant in recognizing a common-law tort remedy for an employee whose discharge contravenes state law or public policy." Lepore v. National Tool and Mfg. Co., 224 N.J. Super. 463, 468, 540 A.2d 1296 (App.Div. 1988) (citing Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 417 A.2d 505 (1980)), aff'd, 115 N.J. 226, 557 A.2d 1371 (1989), cert. denied, 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 353 (1989); see also Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 536 A.2d 237 (1988) (discharge of at-will employee in retaliation for requesting information relevant to suspected employment discrimination); Kalman v. Grand Union Co., 183 N.J. Super. 153, 443 A.2d 728 (App.Div. 1982) (discharge of at-will pharmacist in retaliation for keeping pharmacy open contrary to employer's directive but as required by state rules); Lally v. Copygraphics, 173 N.J. Super. 162, 413 A.2d 960 (App.Div. 1980) (discharge of at-will employee in retaliation for filing worker's compensation claim), aff'd, 85 N.J. 668, 428 A.2d 1317 (1981). In these cases and others, we have sought to balance the interests of the employee, the employer, and the public. Although employers have an interest in knowing that they can operate their businesses as they see fit as long as their conduct is not against public policy, employees have the right to be protected from retaliatory action when they have done nothing more than assert their legal rights.
Both the statutory protection and the common law remedy have limits. For example, no reasonable person would suggest that a hospital administrator could physically assault a physician because *506 of his concern with the doctor's competency. Nor would it be reasonable for a hospital employee to damage or destroy medical equipment because of his belief that a particular mode of treatment is improper or unethical. Certainly violence has no sanctuary in the statutory or common law remedy and the unilateral destruction of property cannot masquerade under the guise of advocacy or protest. We do not suggest that CEPA provides protection to an employee only where the least intrusive method is used to object to an employer's practices or procedures. Nevertheless, the statutory scheme cannot be read so broadly as to provide blanket immunity to an employee for assaultive or destructive conduct, however well intended.
We stress the limited contours of our holding. Without notice to anyone, plaintiff unilaterally destroyed patients' blood samples. Less drastic avenues of protest or objection were readily available. Under these circumstances, the Law Division properly pierced the allegations of the pleadings and determined that there were no factual issues requiring disposition at trial. See Pierce v. Ortho Pharmaceutical Corp., 84 N.J. at 65, 417 A.2d 505. We perceive no sound basis to disturb the Law Division's judgment.
Affirmed.