727 A.2d 525 (1999)
320 N.J. Super. 467
Louise KOLB, Plaintiff-Appellant,
v.
Dr. Carol A. BURNS, James Brocious, Lynn Ganz, Terry Johnson, Margaret Matlosz, Thomas Mazzola, James Momary, Sandra Pietraszkiewicz, William Read, Barbara Rogers and the Mansfield Township Board of Education, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1999.
Decided April 27, 1999.
*527 Nancy Oxfeld, Newark, for plaintiff-appellant (Balk, Oxfeld, Mandell & Cohen, attorneys; Ms. Oxfeld, of counsel and on the brief).
Sharon H. Moore, Clinton, for defendants-respondents (Gebhardt & Kiefer, attorneys for respondents; Ms. Moore and Deborah B. Rosenthal, on the brief).
Before Judges HAVEY, SKILLMAN and LESEMANN.
*526 The opinion of the court was delivered by HAVEY, P.J.A.D.
Plaintiff appeals from a summary judgment dismissing her complaint filed under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. In the complaint she alleges that defendants Mansfield Board of Education, the individual Board members, and Superintendent Dr. Carol A. Burns, retaliated against her by withholding her salary increment after she testified before the Office of Administrative Law (OAL). The OAL matter was initiated by petitions to the New Jersey Division of Special Education filed by W.B., the mother of E.J., a neurologically impaired child, for changes in E.J.'s Individualized Education Plan (IEP) and for his placement in a private school.
In granting summary judgment to defendants, the trial court held that the Board was justified in withholding the increment because plaintiff had violated a "directive" given by Dr. Burns prohibiting plaintiff from communicating with W.B. without the presence of another district employee. Viewing that violation as dispositive, the court concluded that plaintiff had no cause of action under CEPA as a matter of law. We reverse. Genuine issues of material fact exist concerning whether defendants' proffered reasons for withholding plaintiff's salary increment were legitimate and nondiscriminatory, rather than pretextual as retaliation against plaintiff for her testifying on W.B.'s behalf.
We view the evidentiary material presented on defendants' summary judgment motion, as we must, in a light most favorable to plaintiff. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995). Plaintiff is a tenured teacher employed by the district and is certified in both elementary and special education. During the 1993-94 school year, E.J. was a student in plaintiff's third grade class. Catherine Brennan, the Director of the Mansfield Township Child Study Team, worked with plaintiff during the 1993-94 school year to implement E.J.'s IEP.
W.B., E.J.'s mother, had disputed E.J.'s classification and placement since July 1992. The dispute has spawned four contested cases before the OAL and a suit filed in the Federal District Court alleging civil rights violations against the Board and various district employees. On October 11, 1993, plaintiff prepared a written summary of E.J.'s progress in the third grade, and gave it to W.B. She described the myriad of difficulties E.J. had experienced, including problems with organization and interacting with other *528 children, bathroom difficulties, and his inability to focus on assignments. She concluded that "[i]n my professional opinion I believe [E.J.] is only going to deteriorate in a regular classroom. I believe he needs a small, special class that will deal with his problems."
On October 27, 1993, Dr. Burns advised plaintiff that when she had conferences with W.B., someone else from the district should be present in order to witness the discussion. Dr. Burns testified in her deposition that she thought this step was necessary to "protect the district" and to prevent "any further employees being involved in litigation."
In November and December 1993, W.B. filed petitions with the New Jersey Division of Special Education seeking ten changes in E.J.'s IEP, independent evaluations, and his placement in a private school. The Board opposed W.B.'s request. The matters were consolidated and assigned to an administrative law judge for hearings commencing on December 17, 1993. Plaintiff was subpoenaed by W.B. to appear and give testimony at the OAL hearing. She appeared on four dates in February, March and June 1994.
Plaintiff testified that E.J. had difficulty in focusing on class work, writing sentences and keeping up with the other students. According to plaintiff, she discussed these problems with Brennan at several meetings. Specifically, on October 23, 1993, she explained to Brennan her concerns with E.J.'s bathroom habits, the way he walked in the hall, and his touching and hitting other children. Brennan acknowledged in her deposition that she was present during plaintiff's testimony in order to learn what sort of problems E.J. was experiencing, so, as head of the Child Study Team, she could "address E.J.'s needs as I was best able to do." However, no significant changes were implemented in E.J.'s IEP as a result of plaintiff's testimony.
In her testimony, plaintiff admitted that she had spoken to W.B. on several occasions via telephone, and viewed these discussions as very helpful. She acknowledged that Dr. Burns had directed her not to "conference" with W.B. without the presence of another district employee. However, it was plaintiff's understanding that Dr. Burns' directive did not cover phone calls, and was for plaintiff's own protection. Plaintiff also believed that the presence of another employee might inhibit a meaningful exchange with W.B. about E.J.'s difficulties.
On June 23, 1994, Dr. Burns prepared plaintiff's "Annual Teacher Performance Evaluation," giving plaintiff satisfactory ratings in all applicable areas, and recommending that plaintiff be given the normal salary increment.
On July 14, 1994, David A. Wallace, Esquire, the Board's attorney, reviewed the OAL transcripts and concluded that plaintiff had withheld "information" concerning E.J. from the Child Study Team and the Resource Room teacher, and had violated Dr. Burns' directive that she not communicate with W.B. without another district employee being present. He immediately notified Dr. Burns of his findings and discussed with her the withholding of plaintiff's increment.
On August 17, 1994, plaintiff received a letter from Wallace indicating that on August 25, 1994, Dr. Burns would be presenting "a recommendation that the Board withhold your entire increment for the 1994-95 school year...." The reasons for the recommendation were twofold:
1. Your failure to timely communicate to, and your actions to withhold from, the resource room teacher and/or the child study team your concerns regarding a classified student in your class, contrary to your acknowledged understanding as to your responsibilities in this area, and
2. Your failure to obey, and your actions to evade, an express administrative directive that all communications with a particular parent with whom the district was in ongoing multiple litigation, must take place in the presence of another district employee as witness.
On August 25, 1994, the Board voted to withhold plaintiff's increment based on the above stated reasons. Plaintiff requested another hearing and, on November 29, 1994, *529 the Board again considered the issue, and again elected to withhold her increment[1].
As a result of the Board's action, plaintiff filed the present CEPA complaint against defendants. In granting summary judgment to defendants, the trial court framed the issue as "[b]ased upon the evidence that was presented to the Board, did the Board have the right to make [the] decision [to withhold the increment]? If they didn't, then it was a retaliatory action." The trial court focused on the Board's second proffered reason for withholding plaintiff's increment, her purported disobedience of Dr. Burns' directive, and concluded:
The issue is whether or not the actions of the Board were retaliatory or whether... there was some justification for the Board's actions. And I think it's a matter of law, it does not seem to beso far today I have not heard any dispute as to what the actual facts were. There's an admission of a direct communication. There's an admission that there was a directive not to communicate.
....
[plaintiff] was circumventing that by making the phone conference. She knew what she was doing as far as I'm concerned. And I don't think I need to take testimony on that issue because I think it's already been established here in the papers that are before me. Therefore, I'm going to grant the motion for summary judgment.
I
N.J.S.A. 34:19-3 defines the class of employee actions protected by CEPA:
An employer shall not take any retaliatory action against an employee because the employee does any of the following:
a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law[;] ...
b. Provides information to, or testifies before, any public body conducting an investigation hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer[;]... or
c. Objects to or refuses to participate in any activity, policy or practice which the employee reasonably believes:
(1) is in violation of a law, or a rule or regulation promulgated pursuant to law[;] ...
(2) is fraudulent or criminal; or
(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.
CEPA "elaborates on and derives from the common law cause of action for wrongful discharge [the New Jersey Supreme Court] first recognized in Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72[, 417 A.2d 505] (1980)." Mehlman v. Mobil Oil Corp., 153 N.J. 163, 180, 707 A.2d 1000 (1998). In Pierce, supra, the Court held that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." 84 N.J. at 72, 417 A.2d 505.
Most CEPA complaints which are the subject of reported cases allege violations within the Pierce framework. As such, they are grounded on either subsection a. or c. of the Act, where the employee contends that the employer retaliated because he or she "blew the whistle" on some activity, policy or practice, which the employee reasonable believed was illegal or in violation of a clear mandate of public policy. N.J.S.A. 34:19-3a and c; see e.g., Mehlman, supra, 153 N.J. at 196, 707 A.2d 1000 (recognizing cause of action for a New Jersey employee whose employer retaliated against him for objecting to the violation of a clear mandate of public policy that threatened to harm citizens of other states or countries); Young v. Schering Corp., 275 *530 N.J.Super. 221, 236-37, 645 A.2d 1238 (App. Div.1994) (holding that plaintiff's objection to Schering's decision to research Florfenicol was not a protected activity under CEPA because the employer's activity was not in violation of a law, regulation, or "clear mandate of public policy"), aff'd 141 N.J. 16, 660 A.2d 1153 (1995); see also Falco v. Community Medical Center, 296 N.J.Super. 298, 315, 686 A.2d 1212 (App.Div.1997), certif. denied, 153 N.J. 405, 709 A.2d 798 (1998); Haworth v. Deborah Heart & Lung Ctr., 271 N.J.Super. 502, 506, 638 A.2d 1354 (App.Div.1994).
In order to maintain a cause of action under subsections a. or c. of CEPA, a plaintiff must satisfy the following elements: (1) that he or she reasonably believed that his or her employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law; (2) that he or she performed whistle-blowing activity described in N.J.S.A. 34:19-3a, c(1) or c(2); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Falco, supra, 296 N.J.Super. at 315, 317, 686 A.2d 1212. A claimant under subsection c(3) must establish the same prima facie elements, however, he or she must first articulate the existence of a clear mandate of public policy which the employer's conduct violates. Mehlman, supra, 153 N.J. at 187, 707 A.2d 1000. In these cases, the court must make a threshold determination regarding "`the specific terms of a statute or regulation, or the clear expression of public policy, which would be violated if the facts as alleged are true.'" Falco v. Community Med. Ctr., supra, 296 N.J.Super. at 310, 686 A.2d 1212 (quoting Fineman v. New Jersey Dep't of Human Servs., 272 N.J.Super. 606, 620, 640 A.2d 1161 (App.Div.), certif. denied, 138 N.J. 267, 649 A.2d 1287 (1994)). See also Young v. Schering Corp., supra, 275 N.J.Super. at 233, 645 A.2d 1238, aff'd, 141 N.J. 16, 660 A.2d 1153 (1995).
Here, plaintiff alleges a violation of N.J.S.A. 34:19-3b, involving retaliatory action arising out of her testimony before a public body concerning a violation of the law raised by W.B.'s petitions before the OAL. Consequently, we need not address the threshold question under subparagraphs a and c, whether there was a specific statute or regulation or clear expression of public policy which would be violated if the facts alleged by plaintiff are true. Falco, supra, 296 N.J.Super. at 310, 686 A.2d 1212. Under subparagraph 3b, if the facts are as plaintiff alleges, the defendants have violated a clear mandate of public policy; the activity described in subparagraph b, testimony before a public body concerning a violation of the law, is expressly "protected" by CEPA.
CEPA, like the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, is a civil rights statute. Abbamont v. Piscataway Twp. Board of Educ., 138 N.J. 405, 431, 650 A.2d 958 (1994). It is "remedial" legislation and therefore "should be construed liberally to effectuate its important social goal." Ibid. Because both CEPA and the LAD seek to eliminate "vindictive employment practices" id. at 418, 650 A.2d 958, the Court in Abbamont held that standards for imposing liability against private employers, see Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 626, 626 A.2d 445 (1993), should also be applied under CEPA as providing the "`most effective intervention and prevention' of retaliatory actions against employees." Abbamont, supra, 138 N.J. at 418, 650 A.2d 958 (quoting Lehmann, supra, 132 N.J. at 626, 626 A.2d 445). Consistent with Abbamont `s approach, the United States District Court, applying New Jersey law, has held that the analytical framework applied in a retaliatory discharge case under CEPA is similar to that applied in a violation of anti-discrimination statutes, such as Title VII of the Federal Civil Rights Act.[2]Bowles v. City of Camden, 993 F.Supp. 255, 261 (D.N.J.1998). Thus, because CEPA is anti-discrimination legislation, the elements of a cause of action under the Act are derived from the Civil Rights landscape. Ibid.
Where the plaintiff proceeds on a "pretext" theory, proof of discrimination under Title VII and our own LAD, involves a three-step process. Plaintiff must first *531 establish a prima facie case of discrimination. Erickson v. Marsh & McLennan Co., Inc., 117 N.J. 539, 550, 569 A.2d 793 (1990); Andersen v. Exxon Co., 89 N.J. 483, 492, 446 A.2d 486 (1982) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973)). Once a prima facie case is established, the burden of persuasion is shifted to the employer to rebut the presumption of discrimination by articulating some legitimate nondiscriminatory reason for the adverse employment action. Andersen, supra, 89 N.J. at 493, 446 A.2d 486; Mogull v. CB Commercial Real Estate Group, Inc., 319 N.J.Super. 53, 65, 724 A.2d 863 (App.Div.1999); Maiorino v. Schering-Plough Corp., 302 N.J.Super. 323, 346, 695 A.2d 353 (App. Div.), certif. denied, 152 N.J. 189, 704 A.2d 19 (1997). Upon such a showing by the employer, plaintiff has the ultimate burden of proving that the employer's proffered reasons were a pretext for the discriminatory action taken by the employer. Romano v. Brown & Williamson Tobacco Corp., 284 N.J.Super. 543, 551, 665 A.2d 1139 (App. Div.1995). As to this prong of the three-part test, plaintiff need not provide direct evidence that her employer acted for discriminatory reasons in order to survive summary judgment. "She need only point to sufficient evidence to support an inference that the employer did not act for its proffered non-discriminatory reasons." Kelly v. Bally's Grand, Inc., 285 N.J.Super. 422, 432, 667 A.2d 355 (App.Div.1995). In other words, the plaintiff, as the nonmoving party, "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them `unworthy of credence,' and hence infer `that the employer did not act for [the asserted] non-discriminatory reasons.'" Fuentes v. Perskie, 32 F.3d 759, 765 (3rd Cir.1994) (citations omitted) (quoting Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3rd Cir.1993)).
Bowles applied the above analytical framework to CEPA claims by first addressing the prima facie case:
In order to establish a prima facie case of discriminatory retaliation under Title VII, and therefore CEPA, [plaintiff] must show "1) that [she] engaged in protected activity, 2) that [her] employer ... took adverse action against [her], and 3) that a "casual link exists between the protected activity and the employer's action." Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir.1997).
[Bowles, supra, 993 F.Supp. at 262.]
See also Young, supra, 275 N.J.Super. at 233, 645 A.2d 1238. Consistent with the burden-shifting framework applied to the LAD and Title VII claims, once plaintiff establishes these three elements, then the defendant must come forward and advance a legitimate, nondiscriminatory reason for making the adverse decision. If such reasons are proffered, plaintiff must raise a genuine issue of material fact regarding whether the employer's proffered explanation is pretextual or whether, the "retaliatory discrimination was more likely than not a determinative factor in the decision." Bowles, supra, 993 F.Supp. at 262. We adopt the Bowles' analysis as legally sound and consistent with New Jersey's general treatment of claims asserted under anti-discrimination litigation. See Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 97, 570 A.2d 903 (1990) (where our Supreme Court examined federal law interpreting Title VII "as a key source of interpretive authority" when dealing with claims under the LAD).
II
Here, plaintiff established a prima facie case of discriminatory retaliation. She engaged in a protected activity: testifying before a public body investigating whether defendants had violated the law by failing to fulfill their obligations under both the Individuals with Disabilities Education Act, 20 U.S.C.A. §§ 1400 to 1485, and N.J.A.C. 6:28-1.1, to provide a disabled child with an appropriate public education. Defendants admit the causal relationship between plaintiff's testimony before the ALJ and their decision to withhold the increment. It is their position, however, that while the adverse decision *532 was brought about by plaintiff's testimony, they did not act because that testimony was adverse to the Board's interest. Rather, according to defendants, it was because the testimony demonstrated: (1) plaintiff had not fully disclosed E.J.'s problems to the Child Study Team; and (2) she had disobeyed Dr. Burns'"directive" that she not conference with W.B. without another district employee being present. These proffered reasons satisfied defendants' burden of advancing legitimate nondiscriminatory reasons for their adverse employment decision.
The flaw in the trial court's analysis in granting summary judgment to defendants is that it failed to consider whether plaintiff presented some evidence, direct or circumstantial, from which a reasonable factfinder could conclude that defendants' proffered reasons were "`either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).'" Romano, supra, 284 N.J.Super. at 551, 665 A.2d 1139 (quoting Fuentes, supra, 32 F.3d at 764) (evaluating retaliation claim based on "pretext" theory under the LAD). As stated, the trial court rested its decision on defendants' second proffered reason for withholding plaintiff's increment, plaintiff's failure to obey Dr. Burns'"express administrative directive that all communications with [W.B.] with whom the district was in ongoing multiple litigation, must take place in the presence of another district employee as witness."
In our view, defendants misstate the directive given by Dr. Burns. It was not, as the Board framed it, "an express administrative directive." It was not in writing, and a trier of fact could find that plaintiff reasonably construed it as intended solely to protect plaintiff, rather than the district. In fact, Brennan confirmed plaintiff's understanding. She testified in her deposition that the reason for the "directive" was to protect plaintiff, and that protection of the district "was not the reason that was presented" by Dr. Burns. Moreover, Dr. Burns did not request "all communications" with W.B. to be in the presence of another district employee. She instructed plaintiff not to "conference" with W.B., and admitted that she did not mention phone calls when she spoke with plaintiff. Further, the record indicates that Dr. Burns had plaintiff's diary, in which she detailed her dealings with E.J. and W.B., and had access to the employee phone log in the teachers' conference room which recorded all of plaintiff's phone calls to W.B. during the pertinent time period. A rational factfinder could conclude that Dr. Burns knew of plaintiff's calls to W.B. but viewed them as inconsequential to the Board's interests in the OAL proceedings or federal suit against the district.
In addition, Brennan became aware during plaintiff's testimony before the ALJ that plaintiff did not believe Dr. Burns' directive included phone calls with W.B. However, Brennan never spoke with plaintiff regarding the calls, nor did she relay her concerns about the calls to any representative of the Board. Even Wallace, the Board's attorney, who cross-examined plaintiff during the OAL proceedings, did not inform Dr. Burns about the purported violation of the "directive" until July 1994, many months after plaintiff's testimony. In short, a factfinder could reasonably conclude that the proffered reason was a pretext, and that defendants were actually motivated by anger with plaintiff because of their perception that she aided W.B. in her litigation against the district.
The trial court did not address the second proffered reason given by the Board in withholding plaintiff's increment, stating:
Your failure to timely communicate to, and your actions to withhold from, the resource room teacher and/or child study team your concerns regarding a classified student in your class, contrary to your acknowledged understanding as to your responsibilities in this area....
In our view, there are also genuine fact issues concerning whether this purported reason was a pretext for retaliation against plaintiff for her testimony. It could reasonably be concluded that Brennan, who heard plaintiff's testimony describing E.J.'s problems, was of the view that plaintiff had not withheld essential information regarding E.J., since Brennan never reported to Dr. Burns or to anyone else the contents of plaintiff's testimony, nor did the Child Study *533 Team modify E.J.'s IEP in any material degree as a consequence of it. Instead, it was Wallace, the Board's attorney, who reached the conclusion that plaintiff had failed to communicate her concerns about E.J. to the Child Study Team after Wallace, sometime in July 1994, reviewed plaintiff's testimony. The fact that Brennan, who was the trained expert representing the Child Study Team, did not advise Dr. Burns about plaintiff's testimony, or implement material changes in E.J.'s IEP as a result of it, would permit the trier of fact to draw a retaliatory inference.
In addition, defendants'"withholding information" allegation was based on selective portions of Wallace's cross-examination of plaintiff which he had given to the Board, and which, he claimed, revealed that plaintiff did not inform the Child Study Team about E.J.'s problems with staying in line, bathroom habits, and his difficulty packing up his book bag. However, in her deposition Brennan admitted that E.J.'s bathroom problems had been called to her attention in October 1993, at least four months prior to plaintiff's testimony. In fact, Brennan and the Child Study Team had developed a bathroom chart for E.J. which had been given to plaintiff. The record further indicates that plaintiff had informed Brennan of the difficulties E.J. was having walking in line prior to plaintiff's testimony before the OAL. Moreover, Brennan's deposition testimony concerning what she had learned from plaintiff's appearance before the OAL was exceedingly vague. She testified:
I would often find out that something that [plaintiff] would mention E.J. having difficulty with, that through her elaboration at the OAL, she would provide a lot of discussion which described the incidents as perhaps being more frequent or more of a concern than I understood them to be.
Finally, we cannot ignore the fact that on June 23, 1994, after plaintiff gave her testimony before the ALJ, Dr. Burns gave plaintiff satisfactory ratings on plaintiff's "Annual Teacher Performance Evaluation," and recommended that she be given the normal salary increment. In the performance evaluation, Dr. Burns reported that plaintiff "[c]onducts ... herself as a professional while representing, carrying out, or performing as a representative of" the district. This evaluation and recommendation is telling, and casts doubt upon the credibility of the proffered reasons given for withholding plaintiff's increment.
We conclude that a material factual dispute exists as to whether defendants retaliated against plaintiff when they voted to withhold their increment. When the evidence is viewed in a light most favorable to plaintiff, a rational jury could conclude that the proffered reasons were a pretext rather than legitimate and nondiscriminatory.
Reversed and remanded for further proceedings.
NOTES
[1] Plaintiff sought review of the withholding of her increment through the grievance procedure and also filed the present action. She eventually succeeded through the grievance procedure and had her increment reinstated. The Board has appealed that determination. See Mansfield Educ. Ass'n v. Mansfield Board of Educ., A-1382-98T5.
[2] 42 U.S.C.A. § 2000e.