**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1726-14T4

GINA MARIE MILLER,

    Plaintiff-Appellant,

v.

SHORE MEMORIAL HOSPITAL,
SHORE MEDICAL CENTER AND
VICTOR GAZZARA,

    Defendants-Respondents.

_____

        Submitted October 5, 2016 — Decided  November 28, 2016

        Before Judges Reisner and Koblitz.

        On appeal from Superior Court of New Jersey,
        Law Division, Atlantic County, Docket No. L-
        3333-12.

        Richard L. Press & Associates, attorneys for
        appellant (Richard L. Press, on the brief).

        Paisner Litvin, attorneys for respondents
        (Richard J. De Fortuna, of counsel and on the
        brief).

PER CURIAM

    Plaintiff Gina Marie Miller appeals from an October 31, 2014

order granting summary judgment, dismissing her complaint under

the Conscientious Employee Protection Act (CEPA), <u>N.J.S.A.</u> 34:19-1 to -14. We affirm.

It is helpful to begin by considering CEPA and its proof paradigm. CEPA is remedial legislation designed to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." <u>Abbamont v. Piscataway Twp. Bd. of Educ.</u>, 138 <u>N.J.</u> 405, 431 (1994). The proof paradigm for a CEPA case is similar to that used in cases under the Law Against Discrimination, <u>N.J.S.A.</u> 10:5-1 to -42. <u>Kolb v. Burns</u>, 320 <u>N.J. Super.</u> 467, 477-79 (App Div. 1999). To establish a prima facie case under CEPA, the plaintiff must establish four prongs:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity described in <u>N.J.S.A.</u> 34:19-3(c);
>
> (3) an adverse employment action was taken against him or her; and
>
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [<u>Lippman v. Eithicon, Inc.</u>, 222 <u>N.J.</u> 362, 380 (2015) (citation omitted).]

After the plaintiff presents a prima facie case,

> [t]he burden of production then shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. Once the employer does so, "the presumption of retaliatory discharge created by the prima facie case disappears and the burden shifts back to the [employee]." At that point, the employee must convince the fact finder that the employer's reason was false "and that [retaliation] was the real reason." The ultimate burden of proof remains with the employee.
>
> [Winters v. N. Hudson Reg. Fire & Rescue, 212 N.J. 67, 90 (2012) (citations omitted).]

We consider the issues in this case in light of those legal principles. Plaintiff, a social worker employed by the Shore Medical Center (Hospital), claimed that the Hospital terminated her employment as a reprisal, because she had engaged in whistle-blowing activity protected by CEPA. For purposes of the summary judgment motion, the trial court found that plaintiff had engaged in CEPA-protected whistle-blowing, a finding defendants do not challenge on this appeal.[1]  While there was a four-month gap

---

[1] We note, however, that plaintiff failed to identify any applicable law, rule, regulation, or professional code of ethics that would support a whistle-blowing claim, with respect to her complaint that a masters-degree candidate, serving as a Hospital social work intern, delivered some legal papers to a judge's chambers. That strict proof requirement - to identify the specific basis for the whistle-blowing complaint - was emphasized in Hitesman v. Bridgeway, Inc., 218 N.J. 8, 33 (2014), which was decided a few months before the summary judgment motion in this case.  However, because the parties did not brief this issue, we do not rest our decision on it.

between plaintiff's alleged whistle-blowing and her termination, we will assume for purposes of this appeal that she satisfied the relatively low threshold for presenting a prima facie case because the manager about whom she complained participated in the decision to fire her. See El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 168 (App. Div. 2005) (noting "that the evidentiary burden at the prima facie stage of the analysis is 'modest,' or even 'slight'") (citation omitted).

There is no dispute that the Hospital presented proof of legitimate non-retaliatory reasons for firing plaintiff. The central issue on this appeal is whether the summary judgment record could support a finding that the Hospital's reasons were merely a pretext for retaliation. See Kolb, supra, 320 N.J. Super. at 478.

Our review of the trial court's summary judgment order is de novo, employing the same Brill[2] standard used by the trial court, and viewing the motion evidence in the light most favorable to plaintiff. See Lippman, supra, 222 N.J. at 367; Kolb, supra, 320 N.J. Super. at 471. After reviewing the record in light of those principles, we conclude that, even giving plaintiff the benefit of all favorable inferences from the evidence, no rational jury

---

[2] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

would conclude that the Hospital's reasons for firing her were a pretext for retaliation. See Brill, supra, 142 N.J. at 540-41.

The undisputed evidence, meticulously documented in the hospital's personnel records, established that plaintiff had endemic attendance and punctuality issues, going back several years. In fact, on January 19, 2011, about four months prior to her termination, plaintiff had been given two warnings, including a third-level final disciplinary warning for "poor job performance." The third-level notice cited plaintiff for arriving late for work or not showing up for work. The warning put her on notice that failure to improve could lead to termination. The warning had been preceded by at least two written notices from her supervisor reminding her that she needed to be at work by 9:30 a.m. and noting her failure to arrive on time.

On January 26, 2011, plaintiff received a memo dated January 25, 2011, from Victor Gazzara, the Hospital's Director of Patient Relations and Social Services, and Christine Gabrielli, Manager of Social Services, once again reminding her of the need to arrive at work at the assigned hour, and reminding her to review her email on a daily basis.

On January 27, 2011, plaintiff made her "whistle-blowing" allegations to the Human Resources Department. She complained that on January 19, 2011, Gazzara had allowed a social work intern,

rather than a social worker, to deliver a civil commitment application to a judge. She also complained that on January 14, 2011, Gazzara had made comments to her which she found insulting. She further expressed concern that she received the third-level warning "only 1 week after my job was changed and Victor came into the dept."[3]

The Human Relations (HR) Department investigated plaintiff's complaint and sent her a letter concluding that further action was not warranted. The letter, dated February 10, 2011, memorialized plaintiff's admission that she had discussed with Gazzara her concerns about his comments and he had "apologized if he offended [her] in any way." The letter also advised that the leadership of each department was responsible for deciding whom to assign to deliver court papers, and the HR department could not intervene in those decisions. The letter also noted plaintiff's pending, separate challenge to the disciplinary notices.

On February 22, 2011, the Hospital's Vice President of Medical Affairs, Peter Jungblut, sent plaintiff a detailed letter rejecting her appeals from the second and third corrective

---

[3] The record reflects that plaintiff was transferred into a new assignment, where she was required to arrive at work an hour earlier than she had previously been used to arriving. The record also reflects that she did not comply with that new requirement, but instead was repeatedly late to work.

counseling notices. Jungblut's letter reviewed plaintiff's history of attendance problems since 2009, and noted that future failure to follow Hospital guidelines could result in termination.

Plaintiff's employment was terminated after a patient complained, on April 20, 2011, that plaintiff disclosed confidential medical information to the patient's family without the patient's consent. If true, that would constitute a violation of federal patient privacy law (HIPAA). When plaintiff's supervisor checked the patient's record, it did not contain any documentation from plaintiff noting the required consent. At her deposition, plaintiff testified that she did obtain the patient's consent and documented the consent. However, the patient's records, which are in the appendices, contain no such documentation, and defendant submitted undisputed evidence that a patient documentation note, once placed in the computer system, could not be deleted.

According to the supervisor, a check of additional patient records revealed that plaintiff did not document, or failed to timely document, actions taken with respect to other patients. Based on our review of the records in the appendices, it appears that some of them do not document any contacts between plaintiff and the patient and some of them do. Apparently, neither side presented any legally competent evidence explaining each record,

other than the record of the patient who complained about lack of consent.

On May 5, 2011, the same day that plaintiff's supervisors were meeting to discuss the HIPAA problems, they received notice that a patient's family member had complained that plaintiff had treated the family rudely. During discovery, the woman who made the complaint was deposed. She testified that she spoke to a hospital social worker about her daughter's serious drug and mental health problems, and that the social worker was rude, unsympathetic and, in the woman's view, treated her family like "trash." The woman testified that she complained about this treatment to the Hospital administration. At her deposition, plaintiff admitted speaking to the woman, and admitted that the woman had complained about her; however, plaintiff denied that she had been rude to the woman.

In a May 6, 2011 letter to plaintiff confirming her termination, Gazzara noted the complaint from a patient about plaintiff's unauthorized release of her medical information, and plaintiff's failure to properly or timely document her contact with patients. Gazzara further noted plaintiff's admission that she spoke to the patient whose family complained she was rude. He also stated that plaintiff failed to note the contact in that patient's record. Gazzara also cited the "extensive corrective

actions within [plaintiff's] employee file over the years for both time and attendance and poor job performance."

Based on our review of the record, we conclude that plaintiff failed to present evidence that the employer's reasons for terminating her were not true or that they were merely an excuse to retaliate against her. Even if defendant was incorrect in asserting that plaintiff failed to document all of the files defendant cited, it is undisputed that she failed to document the files of the patients who complained about her. And, those HIPAA errors and patient complaints occurred at a point where plaintiff had already been warned several times that she would be terminated if there were continued lapses in her job performance. See El-Sioufi, supra, 382 N.J. Super. at 171. On this record, no rational jury could conclude that the employer's reasons for firing plaintiff were not only untrue but were motivated by retaliatory intent. Id. at 173-74.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1726-14T4