**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0774-22

DONOVAN BEZER,

     Plaintiff-Appellant,

v.

CITY OF JERSEY CITY,
NEW JERSEY, JACOB V.
HUDNUT, in his capacity as
Chief Prosecutor of the City
of Jersey City, New Jersey,
and MARK BUNBURY, in
his capacity as Director of
Human Resources for the
City of Jersey City, New
Jersey,

     Defendants-Respondents.

_____

     Submitted March 18, 2024 – Decided August 23, 2024

     Before Judges Berdote Byrne and Bishop-Thompson.

     On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4373-19.

     McOmber McOmber & Luber, PC, attorneys for appellant (Austin B. Tobin, on the briefs).

Whipple Azzarello, LLC, attorneys for respondents (John A. Azzarello and Amy Valentine McClelland, on the brief).

PER CURIAM

In this employment matter, plaintiff Donovan Bezer appeals from an October 28, 2022 Law Division order granting summary judgment to defendants the City of Jersey City (Jersey City), James V. Hudnut (Hudnut), and Mark Bunbury (Bunbury) (collectively defendants), dismissing with prejudice Bezer's claim under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. We affirm.

I.

We summarize the following facts from the record, viewing the facts in the light most favorable to plaintiff as the non-moving party. Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 125 (2023). In December 2012, Bezer was appointed as a part-time unclassified assistant municipal prosecutor for Jersey City. In October 2016, he was assigned to prosecute housing violations in the housing court.

Pursuant to N.J.S.A. 2B:25-4(f), Hudnut was appointed as chief municipal prosecutor for Jersey City in July 2018. Shortly thereafter, on July 19, 2018, Hudnut circulated a memorandum to Jersey City's municipal prosecutors entitled

"New Marijuana Decriminalization Policy" (July 19 Memo), stating, "effective immediately[,] this office will no longer criminally prosecute marijuana possession before the municipal courts of Jersey City." In that memo, Hudnut exercised prosecutorial discretion to effectuate a new policy to amend "all-marijuana related offenses" to local ordinance offenses resulting in non-criminal dispositions. The memo provided guidance to assistant municipal prosecutors concerning the dismissal of the amended charge and the diversion of marijuana possession charges and signs of addiction to community court. After receiving the July 10 Memo, Bezer expressed his concerns to Hudnut.

In an email to the prosecutors sent two days later, Hudnut stated: "Trenton has an issue with our marijuana policy. . . . The policy remains in place." He further explained: "Despite what the Attorney General Gurbir Grewal's (AG Grewal) letter said, we are not refusing to enforce the law. We are enforcing the law, but as an ordinance." Prosecutors were advised that another update would be provided after Hudnut met with AG Grewal.

In a July 24, 2018 memo entitled "Statewide Guidance on Charging Marijuana-Related Offenses in Municipal Court" (July 24 Memo), AG Grewal notified all county prosecutors, county municipal prosecutor liaisons, and municipal prosecutors that Hudnut's July 19 Memo "was an improper exercise

of a municipal prosecutor's authority" and issued a letter "rendering the [July 19 Memo] void and without legal effect."  The memo further notified prosecutors that until a working group was convened, all prosecutors should "seek an adjournment until September 4, 2018, or later, of any matter involving a marijuana-related offense pending in municipal court."

That same day, Hudnut sent an email to Jersey City assistant prosecutors regarding the July 24 Memo and directed the assistant prosecutors to adjourn all marijuana cases until after September 4, 2018.  Bezer responded:  "Huzzah!! Great work!"

In an August 17, 2018 memorandum entitled "Expectations of Prosecutors and Office '[Reset]'" (Reset Memo), Hudnut provided guidance on his expectations of the responsibilities of assistant prosecutors.  The Reset Memo addressed prosecutorial performance and office protocol.

Three days later, Bezer sent Hudnut an email regarding a municipal waste case that he was prosecuting.  Bezer explained that he did not "believe [he] could proceed in [the] trial insofar as [he felt] physically menaced by the defendant and his counsel" after a court appearance and because he was "a fact witness to what [he] believed was criminal witness tampering" in the case.  He also stated

A-0774-22

he wanted to file a complaint regarding that incident but wanted to confer with Hudnut for advice and feedback.

The next day, Bezer met with Hudnut and expressed dissatisfaction with the then-current assignment. Bezer told Hudnut that he was "unhappy," wanted to be removed from the municipal waste case, and wanted to be transferred to a different law department. He stated that prosecutors are not paid enough to meet the expectations Hudnut presented in his Reset Memo, nor did he find it appropriate that Hudnut was telling prosecutors how to manage their cases.

During the meeting, Hudnut restated his expectations of assistant municipal prosecutors. In regard to Bezer's municipal waste case, Hudnut told Bezer a determination would be made after reviewing a report of the completed investigation conducted by the Jersey City Police. Bezer responded that if he was not removed from the case, at the next court appearance he would place on the record that if the defendant repeated the menacing behavior, that Bezer would "'hit' [defendant]." Bezer was directed not to threaten defendants and to allow the police to investigate the matter. Following the meeting, Hudnut emailed Human Resources Director Bunbury and sought advice on how to proceed with Bezer.

5

On August 29, 2018, AG Grewal issued a memorandum to all county prosecutors, county municipal prosecutor liaisons, and municipal prosecutors entitled "Guidance Regarding Municipal Prosecutors' Discretion in Prosecuting Marijuana and Other Criminal Offenses" (August 29 Memo). The August 29 Memo stated that "a municipal prosecutor may not adopt a categorial policy or practice of refusing to seek convictions for statutory offenses related to marijuana." A prosecutor's discretion is not unlimited and adopting a policy or practice refusing to seek convictions for marijuana offenses would exceed a prosecutor's discretion. The memo also stated that "municipal prosecutors must exercise prosecutorial discretion on a case-by-case basis, considering the particular facts and applicable law in each case." The August 29 Memo provided eight non-exhaustive factors for prosecutors to consider in determining whether to amend or dismiss a charge.

That same day, in an email, Hudnut notified the assistant prosecutors regarding the August 29 Memo. The email summarized the attorney general's guidance on amending or dismissing marijuana offenses, including the eight factors prosecutors should consider in making a decision. The assistant prosecutors were directed to first consult with Hudnut before offering a plea to

a disorderly persons offense where defendant was charged with a marijuana or marijuana-related paraphernalia.

Shortly after Bezer began the municipal waste case, he had a medical emergency on September 18 and the case was adjourned. Bezer was informed by another prosecutor that he was directed to be ready for trial on November 28, 2018. Nevertheless, Bezer emailed the trial judge and opposing counsel and expressed concern for his safety and the intention to use force to defend himself.

On three occasions in October 2018, Bezer's work performance did not meet his employer's expectations. One day, Bezer reported to work but left about five minutes later. On another occasion, Bezer reported to work but left less than one hour later to attend to a matter related to his private practice. Bezer emailed another judge regarding the defendant in the municipal waste case and expressed concerns for his safety, stating that violence was "inevitable" if he continued to try the case, that he was no longer unbiased towards the defendant and that he should no longer be the assigned prosecutor.

On October 22, 2018, Bezer received a written reprimand regarding his email to the judge threatening physical force against a litigant and the attorney and prior discussions regarding his "deficient or problematic work performance, work habit[,] or work-related behavior." That same day, Bezer was also served

A-0774-22

with a notice of minor disciplinary action, charging Bezer with insubordination, chronic or excessive absenteeism or lateness, conduct unbecoming a public employee, neglect of duty, and other sufficient cause – violation of the City's policy regarding "misuse of City property" and "restrictions on employment" pursuant to N.J.A.C. 4A:2-2.3(a). The notice specified Bezer's actions that formed the basis of the disciplinary action. Plaintiff was suspended for one day, which he served on October 23.

Also on October 22, Bezer emailed Hudnut a "CEPA letter." Referencing N.J.S.A. 2B:25-5, which requires municipal prosecutors to exercise their own independent judgment in deciding whether to prosecute, downgrade, or dismiss a case, Bezer stated that he believed the July 19 Memo usurped a municipal prosecutor's right and duty to exercise their own independent judgment. He iterated that on August 29, Hudnut "forbade [his] assistant prosecutors from prosecuting a marijuana or marijuana-related paraphernalia [offense] as a disorderly persons offense unless authorized by [Hudnut]" and this usurped the independent professional judgment of assistant prosecutors. Bezer further expressed concern that municipal prosecutors could be subject to professional discipline for not enforcing the law.

A-0774-22

The parties dispute whether the notice of disciplinary action or the CEPA letter was served first. On October 30, 2018, Jersey City notified defendant that he was on administrative leave with pay until further notice but reasons were not provided.

Following an investigation, in a May 24, 2019 letter, Bezer was notified that he was terminated from his position as assistant municipal court prosecutor for conduct unbecoming and other sufficient cause. Bezer was provided with the following reasons:

> The factual basis for the above charges are related to a review of allegations that you engaged in inappropriate, threatening behavior[,] and general conduct unbecoming a public employee. Specifically, that you targeted a City constituent and his[] attorney in relation to a trial that occurred in or around Spring/Summer 2018, and further that you engaged in threatening and alarming emails and conduct as it relates to his attorney and that you engaged in improper ex parte communications with Chief Municipal Court Judge Carlo Abad in relation to an outstanding reckless driving ticket. Furthermore, please note that although the outside counsel investigating these allegations tried to contact you/your attorney on numerous occasions, you failed to comply with their requests and did not appear for an interview regarding this investigation.

In November 2019, Bezer filed a single count complaint asserting a CEPA claim. After discovery concluded, defendants moved for summary judgment, asserting Bezer had failed to prove a CEPA violation. Bezer opposed, arguing

9

that he satisfied the requisite elements to satisfy his CEPA claim.

Following oral argument on October 28, 2022, the motion judge issued an oral opinion, granting defendants' motion for summary judgment. Citing to the relevant case law and analyzing the four elements required to establish a CEPA claim, the motion judge concluded Bezer failed to satisfy the first element of a CEPA claim. The judge stated: "I do not find it reasonable for [plaintiff] as a prosecutor, as an attorney, to believe that on July 19, 2018[,] Hudnut . . . was usurping [] plaintiff's independent professional judgment," "there's no clear mandate of public policy that's being violated by Hudnut," and Hudnut was "exercising his discretion." The judge found that the July 19 Memo was a "policy judgment." Lastly, Bezer failed to establish that there was a causal connection between his suspension and termination and his complaints regarding Hudnut's marijuana polices. This appeal followed.

## II.

On appeal, Bezer raises the following arguments:

> I. [BEZER] HAS ESTABLISHED A PRIMA FACIE CASE OF RETALIATION PURSUANT TO THE REQUIREMENTS SET FORTH IN THE CEPA AND THEREFORE, THE TRIAL COURT'S ENTRY OF SUMMARY JUDGMENT SHOULD BE REVERSED.

10

A. [BEZER] HAS PLED AND PROFFERED SUFFICIENT EVIDENCE DEMONSTRATING THAT HE HAD A REASONABLE BELIEF THAT DEFENDANTS' CONDUCT WAS ILLEGAL, AND THEREFORE, HAS SATISFIED THE FIRST REQUISITE ELEMENT FOR A VIABLE CEPA CLAIM.

B. THE RECORD UNEQUIVOCALLY ESTABLISHES THAT [BEZER] ENGAGED IN PROTECTED CONDUCT BY COMPLAINING ORALLY AND IN WRITING, OBJECTING TO THE DEFENDANTS' UNLAWFUL POLICY.

C. DEFENDANTS TOOK MULTIPLE ADVERSE ACTIONS AGAINST [BEZER] SUBSEQUENT TO HIS COMPLAINTS AS TO THE ILLEGALITY OF DEFENDANT HUDNUT'S POLICY.

D. THE RECORD CLEARLY ESTABLISHES A QUESTION OF MATERIAL FACT AS TO CAUSALITY BETWEEN DEFENDANTS' ADVERSE ACTIONS AND PLAINTIFF'S PROTECTED CONDUCT, AND THUS, SUMMARY JUDGMENT SHOULD BE REVERSED.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch

11

v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

"The Legislature enacted CEPA to 'protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'" Allen v. Cape May Cnty., 246 N.J. 275, 289 (2021) (quoting Dzwonar v. McDevitt, 177 N.J. 451, 461 (2003)). CEPA prohibits employers from retaliating against employees who perform a whistleblowing activity. N.J.S.A. 34:19-3.

To establish a prima facie CEPA claim, plaintiff is required to demonstrate:

> (1) [they] reasonably believed that [their] employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) [they] performed a "whistle-blowing" activity . . . ; (3) an adverse employment action was taken against [them]; and (4) a causal connection exists

12

> between the whistle-blowing activity and the adverse employment action.
>
> [Allen, 246 N.J. at 290 (quoting Dzwonzar, 177 N.J. at 462).]

"The 'burden shifting analysis under the Law Against Discrimination (LAD) should be applied the CEPA cases.'" Massarano v. New Jersey Transit, 400 N.J. Super. 474, 492 (App. Div. 2008) (quoting Zappasodi v. New Jersey, Dept. of Corrections, 335 N.J. Super. 83, 89 (App. Div. 2000)). First, the plaintiff has the burden to establish a prima facie CEPA claim. Allen, 246 N.J. at 290-91 (quoting Kolb v. Burns, 320 N.J. Super. 467, 478 (App. Div. 1999)). Second, once the plaintiff establishes a prima facie claim, the burden of persuasion shifts to the defendant to establish "a legitimate, nondiscriminatory reason for the adverse employment action." Ibid. Finally, if the defendant satisfies its burden, the burden then shifts back to the plaintiff to prove that "the employer's proffered reasons were a pretext for the discriminatory action taken by the employer." Id. at 291 (quoting Kolb, 320 N.J. Super. at 478).

Bezer renews the arguments presented before the motion judge. Bezer, however, did not satisfy the first and fourth requisite elements to establish a CEPA claim. As to the first element, we are not persuaded by Bezer's argument that he reasonably believed that Hudnut violated a law or a clear mandate of

13

public policy in establishing an internal policy outlined in the July 19 Memo. Moreover, Hudnut directed all municipal court prosecutors to comply with the subsequent memorandums issued by AG Grewal.

"[A] direct causal link between the complaint by the employee and the retaliatory action of the employer" is not required. Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 558 (2013). A plaintiff can show a causal connection exists between the whistleblowing activity and the adverse employment action through "inferences that the trier of fact may reasonably draw based on circumstances surrounding the employment action." Maimone v. City of Atlantic City, 188 N.J. 221, 237 (2006). "The temporal proximity of the employee conduct protected by CEPA and [the] adverse employment action is one circumstance that may support an inference of a causal connection." Ibid.

In regard to the fourth element, Bezer contends there is a causal connection because he served his CEPA letter and received the notice of minor disciplinary action on the same day, and therefore, defendants' reasons for his suspension and ultimate termination were pretextual. Defendant's contention lacks merit. The record here, however, is devoid of any facts from which a trier of fact could reasonably conclude that there was a causal connection between Bezer's CEPA letter and the disciplinary notice.

The record shows Bezer's termination was based on (1) inappropriate, threatening, and alarming emails and conduct related to litigation and his attorney, (2) improper ex parte communications with the Chief Municipal Court Judge Carlo Abad in relation to an outstanding reckless driving ticket, and (3) Bezer's failure to comply with outside counsel's investigation regarding those allegations, including his failure to appear for an interview. We agree with the motion judge that "[e]ven if [we] accept [Bezer's] testimony on face value because of that temporal hurdle[,] [we] don't find that [Bezer's] complaints regarding Hudnut's decisions on marijuana [were] in any way related to the subsequent discipline that he received." Thus, Bezer's "'conclusory and self-serving assertion . . . [was] insufficient to overcome' [a motion for] summary judgment." Dickson v. Cnty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019) (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005)).

We, therefore, conclude no genuine issue of material fact exists, and those facts which are material do not constitute support for Bezer's cause of action. Accordingly, Bezer failed to establish a prima facie CEPA claim, and summary judgment was correctly granted to defendants.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15