761 A.2d 96 (2000)
335 N.J. Super. 83
Joseph V. ZAPPASODI, M.D., Plaintiff/Appellant,
v.
STATE of New Jersey, DEPARTMENT OF CORRECTIONS, RIVERFRONT STATE PRISON and Donald E. Lewis, Defendants/Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 2000.
Decided November 8, 2000.
*98 William F. Ziegler, Woodbury, argued the cause for appellant (Holston, MacDonald & Uzdavinis, attorneys; Mr. Ziegler, on the brief).
James D. Harris, Deputy Attorney General, argued the cause for respondent (John J. Farmer, Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Mr. Harris, on the brief).
Before Judges WALLACE, CARCHMAN and LINTNER.
*97 The opinion of the court was delivered by WALLACE, Jr., J.A.D.
Plaintiff filed a complaint against defendants alleging, inter alia, that he was discharged from his employment in retaliation for his reporting overtime abuses by staff nurses, in violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8 (CEPA). Plaintiff amended his complaint to include a count for fraudulent concealment of evidence. During trial, the judge dismissed the fraudulent concealment of evidence count. A jury found in favor of defendants. On appeal, plaintiff contends that the trial judge erred (1) in failing to charge the jury with pretext and burden shifting; and (2) in dismissing the count for fraudulent concealment of evidence. We affirm.
Plaintiff was hired as the Medical Director at Riverfront State Prison in April 1994. The Administrator of Riverfront was Donald Lewis. The Department of Corrections issued a directive to reduce overtime in all departments. Plaintiff reviewed the overtime of the nursing staff and found that some nurses were abusing overtime. He discovered that some nurses would work overtime on their days off and then call out sick on their regularly scheduled days causing other employees to replace them and collect overtime. He reported the overtime abuse problem to Lewis and to Dr. Fares, the head peer review consultant and the medical liaison between the medical departments at various correctional institutions and the Commissioner of Corrections.
After his initial attempts to reduce overtime were unsuccessful, plaintiff initiated a no overtime policy in early summer 1994. By the end of the summer there was little or no overtime being worked. Plaintiff reported his success to Dr. Fares and Lewis. Some of the nursing staff disliked the no overtime policy and filed administrative grievances against plaintiff.
In late August 1994, plaintiff prescribed Percocet, a schedule II narcotics pain killer, for a dying inmate. Plaintiff followed the necessary procedures in securing the Percocet from a local pharmacy. The prison pharmacist Joseph Ward later discovered that unused Percocet tablets were given to other inmates. Ward advised plaintiff and the nurses that it was illegal to provide one inmate's prescribed narcotics to another inmate. Plaintiff ordered Ward to return the Percocet to stock. Ward offered to destroy the medication but would not agree to store it.
*99 Plaintiff ordered Nurse Amos to secure the medication, but she also refused. Plaintiff decided to take the Percocet home. He ordered a nurse to count each pill. While another physician and a nurse observed him, plaintiff sealed the Percocet in a container, and then took the Percocet home.
Unknown to the plaintiff, an investigation was initiated by Internal Affairs regarding his handling of the Percocet. When plaintiff returned to work on Tuesday morning, he was met in the lobby by members of the Internal Affairs and the Federal Drug Enforcement Agency. Plaintiff gave a written statement concerning the removal of the Percocet.
Investigator Randall confiscated various materials from plaintiff's office. Plaintiff obtained a receipt for the material which included medical records, prescription pads, and a red binder belonging to plaintiff. Plaintiff had retained duplicates of incoming and outgoing prison memos in the red binder, and generally used it as a means of "keeping track" of all the problems existing at Riverfront including the overtime abuse issue. Plaintiff had Investigator Randall sign a receipt indicating that Internal Affairs confiscated the red book and that it was in the possession of the State. Plaintiff claimed that the red binder contained nursing schedules "showing [his] interpretation of fraud and conspiracy, numerous sheets showing nursing errors, medication errors, nursing sheets, copies of inserts from log books and/or patient records, cash overtime sheets, and all incoming memos from March 11, 1994 to August 26, 1994."
On September 14, 1994, Internal Affairs completed its investigation of the Percocet incident. On September 26, 1994, Lewis terminated plaintiff effective October 7, 1994. Although Lewis gave no reason for termination in the letter, later he maintained that he was dissatisfied with plaintiff's performance as the medical director. Lewis concluded that plaintiff failed to resolve scheduling difficulties, to meet the needs of the prisoners, and to solve the overtime problems. It was Lewis's view that the overtime remained out of control.
Plaintiff filed a complaint against the Department of Corrections and Lewis, alleging he was discharged in violation of CEPA. Later, he filed an amended complaint to include a count for fraudulent concealment of evidence for the failure to return his documents to him.
Defendants' motion for summary judgment was denied. Trial commenced on January 12, 1999 before a jury. At the end of the trial, the judge granted defendants' motion to dismiss plaintiff's claim for fraudulent concealment of evidence. The jury returned a verdict in favor of defendants. This appeal followed.

I
Plaintiff contends that the trial judge erred by failing to charge the jury on the law of pretext and burden shifting. Specifically, plaintiff contends that similar to the model jury charge under the Law Against Discrimination, burden shifting and pretext analysis should have been charged to the jury in his CEPA case.
Initially, we note that jury charges "must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them." Velazquez v. Portadin, 163 N.J. 677, 688, 751 A.2d 102 (2000)(quoting Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-92, 222 A.2d 78 (1966)). The trial judge's instructions must be read as a whole. So long as the charges adequately convey the law to the jury and do not mislead or confuse, we should not interfere. Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 418, 690 A.2d 575 (1997). Moreover, if the jury instructions are incapable of "producing an unjust result or prejudicing substantial rights," we should uphold the verdict. Ibid.
*100 The purpose of CEPA is to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Abbamont v. Piscataway Bd. of Education, 138 N.J. 405, 431, 650 A.2d 958 (1994), aff'd, 163 N.J. 14, 746 A.2d 997 (1999). It should be considered remedial legislation and construed broadly to meet its social goal. Ibid.
Recently, we recognized that CEPA, similar to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42, is a civil rights statute. Kolb v. Burns, 320 N.J.Super. 467, 477, 727 A.2d 525 (App.Div.1999). We concluded that the pretext theory and the burden shifting analysis under the LAD should be applied to CEPA cases. Id. at 479, 727 A.2d 525. That is, once plaintiff establishes a prima facie case of retaliatory discharge, the defendant must then come forward and advance a legitimate reason for discharging plaintiff. Id. at 479, 727 A.2d 525.
However, even applying the pretext theory and burden shifting analysis to CEPA claims, we must decide whether it is necessary to charge the jury with pretext and burden shifting. Our Supreme Court in a gender discrimination case has provided guidance in this area. See Mogull v. CB Commercial Real Estate Group, Inc., 162 N.J. 449, 744 A.2d 1186 (2000). In addressing the concept of charging the jury with the particulars of pretext and burden shifting, the Court noted that in applying the McDonnell Douglas [1] analytical framework, the concepts of a "prima facie case and the shifting burdens confuse lawyers and judges, much less jury." Id. at 471, 744 A.2d 1186. The Court elaborated as follows:
There is continuing confusion over whether a plaintiff who has established a prima facie case wins if the defendant's articulated reasons are insufficient as a matter of law. Because the first two stages of a McDonnell Douglas test seem to require findings of law, and since McDonnell Douglas itself arose in the context of a summary judgment, the Appellate Division has stated that many courts that "have considered the issue have determined that, in an employment discrimination case, it is either unnecessary or incorrect to charge the jury on the elements and burden shifting." Baker v. National State Bank, 312 N.J.Super. 268, 711 A.2d 917 (App.Div.1998)(citing cases), aff'd on other grounds, 161 N.J. 220, 732 [736] A.2d 462 (1999).
The Eighth Circuit has said "McDonnell Douglas was not a jury case and its rituals not well suited as a detailed instruction to the jury." Grebin v. Sioux Falls Indep. Sch. Dist. No. 49-5, 779 F.2d 18 (8th Cir.1985)(denying claim that instruction should have incorporated three-part analysis), abrogation on other grounds recognized, Foster v. University of Arkansas, 938 F.2d 111 (8th Cir.1991).
The First Circuit, in Loeb v. Textron, Inc., 600 F.2d 1003 (1st Cir.1979), went further. In discussing the then-open question whether McDonnell Douglas was appropriate to jury cases at all, the court said "McDonnell Douglas was not written as a prospective jury charge; to read its technical aspects to a jury ... will add little to the juror's understanding of the case." Id. at 1017. The First Circuit also anticipated the situation presently facing the Court: "In the unlikely event that there is a dispute over *101 whether the employer has met his burden of production, it will be for the judge to decide whether defendant has stated a legitimate reason with such specificity as to require plaintiff to prove it to be a pretext." Id. n. 16. The Seventh Circuit has even gone so far as to say that the "burden shifting model applies to pretrial proceedings, not to the jury's evaluation of evidence at trial." Gehring v. Case Corp., 43 F.3d 340, 343 (7th Cir.1994). Given the confusion that often results when the first and second stages of the McDonnell Douglas test goes to the jury, we recommend that the court should decide both those issues.

[Id. at 472-73, 744 A.2d 1186.]
On this same theme, we recently explained in an unlawful discrimination case:
We hold that the jury in a case such as this needs to be told with adequate clarity that it is to assess whether plaintiff has made a persuasive showing of unlawful discrimination and that it may use its disbelief of defendant's explanation in making that determination, i.e., that in essence the jury is to make a considered judgment on the ultimate question based on all the evidence before it without the assistance of a presumption. This comports with the understanding that the McDonnell Douglas rule of approach exists only to order the proofs and is not necessarily to be used by the jury in deciding the ultimate factual issue.
[Mattiello v. Grand Union Co., 333 N.J.Super. 12, 18, 754 A.2d 563 (App. Div.2000) (emphasis added).]
In our view, the McDonnell Douglas analytical framework of pretext and burden shifting need not be a component part of the jury charge. Here, although the trial judge denied plaintiff's request to charge the jury with pretext and burden shifting, the judge permitted plaintiff to present evidence to show pretext and to argue pretext to the jury. More importantly, the trial judge charged the jury virtually verbatim from the Model Jury Charge for a CEPA case. As the Court articulated in Mogull, "[i]t is difficult to find that a charge that follows the Model Charge so closely constitutes plain error." Mogull, supra, 162 N.J. at 466, 744 A.2d 1186.
Plaintiff was not limited in presenting evidence to convince the jury that defendant's proffered non-retaliatory reason for discharge was pretextual, "either by introducing countervailing proofs or by arguing that the reason given was inherently unbelievable or, conceivably, in other ways." Mattiello v. Grand Union Co., 333 N.J.Super. 12, 18, 754 A.2d 563 (App.Div.2000). The charge, along with the single liability interrogatory, clearly informed the jury that it must determine whether plaintiff made a persuasive showing of unlawful discharge. In short, we find no error in the failure to charge pretext and burden shifting. While these two concepts are important in the summary judgment context, they are less helpful in the charge to the jury.

II
Plaintiff next contends that the trial judge erred in dismissing his count for fraudulent concealment. Plaintiff disputes the trial judge's conclusion that the record contained no evidence of disruption to plaintiff's case.
A motion for involuntary dismissal after the presentation of the evidence, on all matters other than damages shall be denied "if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." R. 4:37-2. That is, the trial judge must accept as true all evidence supporting plaintiff's claims and accord him the benefit of all legitimate inferences which could be deduced from that evidence. Dolson v. Anastasia, 55 N.J. 2, 5-7, 258 A.2d 706 (1969). If reasonable minds could differ as to the outcome, the motion should be denied.
*102 Thus, in order to succeed in an action for fraudulent concealment plaintiff must show: (1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of the defendant that litigation exists or is probable; (3) willful or negligent destruction of evidence by the defendant designed to disrupt the plaintiff's case; (4) actual disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's acts. Hewitt v. Allen Canning Co., 321 N.J.Super. 178, 183, 728 A.2d 319 (App.Div. 1999) (citations omitted).
Here, the trial judge was satisfied that plaintiff had established the first three elements but that plaintiff failed to satisfactorily establish the fourth element of the tort, an actual disruption of the plaintiff's case. We agree.
Plaintiff's fraudulent concealment argument rested largely on missing nursing schedules, allegedly demonstrating overtime abuses which were removed by defendants from a red binder maintained by plaintiff. Plaintiff claims that the unavailability of these documents disrupted his CEPA case, as they would help show there was abuse and fraud in stealing of overtime.
Plaintiff, however, was unable to provide witnesses or documents at trial to corroborate this assertion. More importantly, plaintiff was provided in discovery with the actual nurse sign-in sheets for each day in which he claimed overtime had been abused. Thus, if overtime had been abused by the prison staff and assuming defendants actually concealed the "anticipated" nursing schedule plan, plaintiff still had the requisite evidence at his disposal to attempt to prove his assertions.
In addition to nursing schedules, plaintiff claimed the red binder also contained other items that would tend to prove his case. However, plaintiff failed to identify these other items during trial. Plaintiff's only specific identification of these other items was his belief that the agency sheets were missing. Simply stated, plaintiff failed to produce any evidence demonstrating how these other items could have aided him in establishing a successful CEPA claim.
Accepting all of plaintiff's evidence supporting his fraudulent concealment claim as true, and according the evidence all legitimate inferences which could be reasonably deduced, we are satisfied the scant evidence presented by plaintiff during trial could not sustain a judgment for fraudulent concealment in his favor. Consequently, the trial judge properly dismissed plaintiff's claim for fraudulent concealment of evidence.
Affirmed.
NOTES
[1] The prima facie case of discrimination in employment requires a plaintiff to show he or she was (1) a member of a protected class; (2) performing his or her job in a satisfactory manner; (3) discharged; and (4) replaced by someone else after he or she left the job. The burden of production but not proof then shifts to the employer to articulate a legitimate, non discriminatory reason for its action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 36 L.Ed.2d 668, 677 (1973). Our Supreme Court adopted this framework in Erickson v. Marsh & McLennan, 117N.J. 539, 551, 569 A.2d 793 (1990).