**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2014-21

CATHLEEN FENYAK,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

ST. PETER'S UNIVERSITY
HOSPITAL, LINDA CARROLL,
and PAMELA HARMON,

     Defendants-Respondents/
     Cross-Appellants.

_____

Submitted December 5, 2023 – Decided January 25, 2024

Before Judges Sumners and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2522-18.

Cahn & Parra, LLC, attorneys for appellant/cross-respondent (Steven D. Cahn, on the briefs).

Norris McLaughlin PA, attorneys for respondents/cross-appellants (Patrick Thomas Collins, of the briefs).

PER CURIAM

In this wrongful termination action, plaintiff Cathleen Fenyak, a registered nurse, filed a six-count complaint in the Law Division seeking compensable and punitive damages against her former employer, St. Peter's University Hospital, its Vice President of Patient Care Services, Chief Nursing Officer, Linda Carroll, and Director of Women and Children's Services, Pamela Harmon. Among her claims, plaintiff asserted she was fired after she "blew the whistle" in violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. Defendants countered plaintiff was terminated because she failed to follow the Hospital's documentation process for dispensing medication and her alleged whistleblowing occurred after she was confronted with the results of the Hospital's investigation.

On November 12, 2021, the trial court issued a case management consent order extending the discovery end date to January 7, 2022, providing deadlines for the fact depositions of two witnesses by each party, and scheduling a return date for dispositive motions and a March 21, 2022 peremptory trial date. Plaintiff also moved to compel certain responses to her second and third requests for documents. Defendants cross-moved for a protective order and moved for summary judgment seeking dismissal of the remaining three counts of plaintiff's

complaint. In her opposition to defendants' cross-motion, plaintiff dismissed her Pierce[1] claim, leaving her CEPA and defamation claims for disposition. Earlier, plaintiff voluntarily dismissed her negligence, breach of contract, and age discrimination claims.

Following oral argument on March 4, 2022, the motion judge, who had not previously managed the case, issued a bench decision dismissing plaintiff's remaining two claims on summary judgment. At the conclusion of the hearing, the judge summarily denied plaintiff's motion to compel discovery and did not address defendants' cross-motion for a protective order. That same day, the judge issued separate orders memorializing his oral decision on defendants' summary judgment motion and plaintiff's motion to compel discovery, but did not enter an order regarding defendants' cross-motion for a protective order. On April 14, 2022, the judge filed an amplification statement pursuant to then-Rule 2:5-1(b), thoroughly addressing all three motions.

Plaintiff now appeals from the March 4, 2022 orders, arguing the motion judge failed to: (1) resolve her discovery motion on the merits; (2) comply with the time requirements set forth in Rule 2:5-1(b) and apply the correct summary

---

[1] Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72 (1980) (affording an at-will employee a wrongful discharge cause of action "when the discharge is contrary to a clear mandate of public policy").

judgment standard; and (3) properly analyze her claims under CEPA.[2] Defendants cross-appeal from the judge's April 14, 2022 decision[3] denying their motion for a protective order.

We reject plaintiff's contentions, concluding she: failed to demonstrate exceptional circumstances warranted her belated non-dispositive discovery motion; was afforded a full opportunity to address the judge's amplified statement in her merits brief; and failed to establish a prima facie claim under CEPA. We affirm the orders denying plaintiff's discovery motion and dismissing her complaint substantially for the reasons expressed by the motion judge in his cogent amplified statement, thereby rendering moot defendants' cross-appeal.

## I.

As a preliminary matter, we reject plaintiff's procedural and substantive challenges to the judge's amplification statement. Plaintiff filed an initial notice of appeal (NOA) on March 9, 2022, followed by an amended NOA on March 15, 2022, correcting certain deficiencies. At that time, Rule 2:5-1(b) authorized the trial court to supplement its prior opinion within fifteen days of the filing of

---

[2] Plaintiff does not appeal from the dismissal of her defamation count.

[3] The motion judge did not enter an order denying defendants' cross-motion.

4

an NOA.[4] Although the judge's amplification statement was filed thirty days after plaintiff filed her amended NOA, plaintiff did not attempt to file her merits brief until four months later on August 29, 2022. After correcting a series of deficiencies, plaintiff's amended merits brief was filed on October 17, 2022, which fully addressed the judge's amplified statement. Because the rule does not bar our consideration of the statement for its late submission and plaintiff was not prejudiced by the judge's delay in filing the statement, there is no merit to her procedural challenge. For the reasons that follow, we reject plaintiff's contention that the judge failed to apply the correct summary judgment standard.

II.

We review the trial court's grant of summary judgment de novo. Conforti v. County of Ocean, 255 N.J. 142, 162 (2023). Employing the same standard as the trial court, we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to plaintiff, as the non-moving party, nonetheless entitle defendants to judgment as a matter of law. See Samolyk v. Berthe, 251 N.J. 73, 78 (2022); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see

---

[4] The rule was amended, effective September 1, 2022, affording the trial court thirty days to file an amplification statement. See R. 2:5-1(d).

also R. 4:46-2(c).  We owe no deference to the trial court's legal analysis or interpretation of a statute.  <u>Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC</u>, 230 N.J. 427, 442 (2017).

The pertinent facts are accurately set forth in the motion judge's amplification statement and need not be reiterated in the same level of detail. By way of brief background, to dispense and administer medications, the Hospital utilized an automated cabinet system, known as AcuDose machines, which were stationed throughout the hospital's various units and managed by the pharmacy department.  To access medications, authorized hospital staff members were required to log into the machines, input a password, and logout. The machines tracked the identity of the user, the time of access, and the quantity of medications added or removed from the cabinet utilized.  A physician's order was required to dispense medications; in the absence of an order, medications were accessed by "overriding" the system.  The machine recorded the overrides, provided a medication inventory, and maintained "an audit trail of all activity involving the access of medications in the cabinet."

Plaintiff was assigned to the Hospital's Labor and Delivery Unit for most of her thirty-year employment until she was terminated on December 15, 2017. According to defendants, during the summer months that preceded plaintiff's

firing, the pharmacy notified Harmon that the Unit's AcuDose discrepancy reports revealed a high usage of Benadryl and Nubain, which required frequent restocking. Harmon allegedly "addressed these issues during weekly leadership meetings" with nurse managers, emphasizing "the importance of educating and reminding the nursing staff [about] the importance of avoiding unnecessary overrides in AcuDose." Defendants further claimed Harmon "addressed the critical, procedural requirements that nurses must document all physician orders and that the administration of the medication must also be documented in the patient's medical record."

At some point that summer, a nurse admitted she diverted medication from the Unit's AcuDose machine after an investigation revealed she had removed more than ten medications for her personal use. The nurse was not terminated but she was reported to the State Board of Nursing and referred to a recovery program for nurses.

The medication discrepancies reported by the Unit's machine continued, prompting Harmon to extend her investigation to all Unit nurses. The investigation revealed another nurse had diverted medications. When confronted, the nurse admitted her conduct, was removed from her management position but not terminated, and referred to the recovery program for nurses.

However, the Unit's medication discrepancies continued. This time, Harmon expanded her investigation to include discrepancies tracked by the Unit's AcuDose machine for other controlled substances, including hydromorphone, fentanyl, and oxycodone. In her responses to defendants' statement of uncontested material facts, plaintiff "admit[ted] she was not aware of the details of Harmon's investigation" at that time.

On November 16, 2017, the Unit's assistant nurse manager emailed Harmon, expressing concern about two transactions made by plaintiff one week earlier on November 9. Referencing the AcuDose machine's data, the nurse claimed the AcuDose machine indicated on the first occasion, plaintiff accessed medication for a patient, who had been discharged from the Unit; the second time, the patient no longer was on the Unit floor.

As a result of the nurse manager's complaint, Harmon conducted further investigation. When deposed, Harmon stated the AcuDose machine revealed plaintiff had unexplained documentation issues forty-seven times during the eleven-month investigation. The issues included administering medication without a doctor's order or the absence of documentation indicating the medication was provided to the patient.

A-2014-21

On December 11, 2017, Harmon, Carroll, and a human resources manager met with plaintiff concerning the discrepancies in her documentation. According to Harmon's notes of the meeting, Carroll told plaintiff she "was practicing outside the scope of her nursing practice by dispensing medications without an order or documentation."

Plaintiff testified at deposition that during the December 11 meeting, she attempted to offer potential explanations – including that perhaps she had not logged out and someone had used her information to access the medication – but Harmon and Carroll were unconvinced. Plaintiff claimed they used her as "a scapegoat" for the Unit's missing medications. She further stated Carroll was concerned that the Joint Commission, an oversight organization, "would shut us down . . . . if there was an investigation." Plaintiff responded, "there should be an investigation." Plaintiff was not fired at that time.

Four days later, however, plaintiff was served with a termination notice during another meeting with the same personnel. Her termination notice stated there were

> a total of 47 times that [she] dispensed medication from the [AcuDose machine] without a physician's order and/or [she] did not document the patient record that the medication had been administered. This is an egregious violation since [she] w[as] working outside [her] scope of practice when [she] dispensed the

9

> medication without a physician's orders. Additionally, failure to document the patient's chart regarding medication administration is a very serious infraction.

Before the motion judge, plaintiff argued she had engaged in protected whistleblowing activity under CEPA. In particular, plaintiff argued when "confronted with the theft of medication . . . she told the vice president of the company you have a systemic problem," which requires "an outside investigation." Plaintiff further argued the parties disputed the reason for her termination, claiming Harmon's initial report indicated <u>medication</u> was missing but did not mention <u>documentation</u> was missing or that she had practiced outside the scope of her nursing practice.

In his amplification statement, the motion judge squarely addressed the issues raised in view of the governing law. The judge accurately summarized the four elements of a CEPA discriminatory retaliation claim. <u>See</u> <u>Lippman v. Ethicon, Inc.</u>, 222 N.J. 362, 380 (2015); <u>see also</u> <u>Klein v. Univ. of Med. & Dentistry of N.J.</u>, 377 N.J. Super. 28, 38 (App. Div. 2005). Pertinent to this appeal, plaintiff was required to demonstrate she reasonably believed defendants' conduct violated a "law, rule, regulation[,] or public policy"; she engaged in whistleblowing activity under N.J.S.A. 34:19-3; defendants took adverse employment action against her; and there existed a causal connection

10

between her whistleblowing activity and defendants' adverse employment action. See Klein, 377 N.J. Super. at 38.

Quoting plaintiff's deposition testimony, the judge was satisfied plaintiff first complained about the AcuDose machine at the December 11 meeting after she was confronted with Harmon's investigation concerning her "47 documentation deficiencies, or instances of medication being provided without a physician's order." Accordingly, the judge reiterated his oral decision, finding plaintiff failed to establish a prima facie case of whistleblowing. The judge elaborated:

> As established by [p]laintiff's own testimony, she never raised a complaint about the AcuDose machine operating improperly until she had actually been called into a meeting and confronted about her 47 failures to properly document medication administration. She does not identify any law, rule, regulation, or clear mandate of public policy being violated by the alleged issues with the AcuDose system.

Citing our decision in Hitesman v. Bridgeway Inc., 430 N.J. Super. 198, 211-12 (App. Div. 2013), aff'd, 218 N.J. 8 (2014), the judge further found he also "could not discern any such law, rule, regulation or clear mandate of public policy closely related to [p]laintiff's complaints about the AcuDose system, which compelled the granting of summary judgment on her CEPA claim." The judge explained: "Plaintiff . . . raised the issue of the AcuDose machine in an

11

attempt to excuse her 47 medication documentation infractions. Plaintiff was trying to protect her job, not trying to protect the public from the violation of a law, rule, regulation, or clear mandate of public policy."

Assuming for the sake of argument plaintiff had engaged in whistleblowing activity, the judge found plaintiff "failed to establish the fourth element of a CEPA claim." Quoting our Supreme Court's decision in Lippman, 222 N.J. at 380, the judge found plaintiff failed "to make a prima facie showing that 'a causal connection exist[ed] between the whistle-blowing activity and the adverse employment action.'" See also Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003). The judge was persuaded the undisputed record established plaintiff did not demonstrate "her termination was in response to her complaining about the AcuDose machine and medication controls." Instead, the judge found the reason for her termination was explicitly stated in her termination notice.

Finally, the judge found plaintiff failed to show defendants' nondiscriminatory "stated reason for termination" was pretextual, which would otherwise trigger the burden-shifting framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Massarano v. N.J. Transit, 400 N.J. Super. 474, 492 (App. Div. 2008) (reiterating New Jersey applies the McDonnell Douglas burden-shifting

approach to CEPA retaliation claims); <u>Zappasodi v. Dep't of Corr.</u>, 335 N.J. Super. 83, 88-91 (App. Div. 2000). Recognizing he was required to accept "as true" defendants' stated reason for termination and make "no credibility assessment," <u>see</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993), the judge was satisfied plaintiff failed to rebut defendants' claim that plaintiff was fired for "practicing outside of her scope as a registered nurse."

On appeal, plaintiff argues the motion judge failed to view the facts in a light most favorable to her as the non-moving party. She claims the judge erroneously focused on whether she engaged in whistleblowing when he should have focused on the causal connection between her "statements and objections during the December 11, 2017 meeting and the termination of her employment days later." To support her argument, plaintiff cites "various emails between Harmon and Human Resources" and "four drafts" of plaintiff's termination notice. She asserts a question of fact remains regarding her assertion that Carroll and Harmon blamed her for the Unit's "widespread problems." Plaintiff also maintains her request for an outside investigation during the December 11 meeting "me[t] the classic definition of a protected whistleblower activity." Maintaining she established a prima facie CEPA retaliation claim, plaintiff also argues defendants' reason for firing her was pretextual.

We have considered plaintiff's contentions in view of the applicable law and the record before the motion judge and conclude they lack sufficient merit to warrant further discussion in our written opinion, R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by the motion judge in his well-reasoned amplification statement.

### III.

Little need be said regarding plaintiff's contention that the judge erroneously denied her motion to compel discovery while defendants' summary judgment motion was pending. Plaintiff sought the disciplinary records of the two nurses who were not terminated for their discrepancies; "discovery concerning the pharmacy safety officer"; and an investigation report, which the judge had reviewed in-camera prior to oral argument. Plaintiff claims the information sought was "directly related to the critical issue in this case," i.e., "why was medication missing and unaccounted for in the . . . Unit in 2017."

In his amplification statement, the judge noted his predecessor's November 12, 2021 case management consent order permitted "only limited additional discovery" and plaintiff failed to demonstrate exceptional circumstances to reopen discovery. See R. 4:24-1(c). Moreover, the judge found the investigation report he had reviewed pertained to an incident that

occurred two years after plaintiff was terminated and did not involve issues related to her dismissal. We conclude the judge correctly applied the court rules and the law governing pending discovery while considering a summary judgment motion. See Mohamed v. Iglesia Evangelica Oasis De Salvacion, 424 N.J. Super. 489, 498 (App. Div. 2012) (holding a party challenging a summary judgment motion for incomplete discovery must demonstrate there is a likelihood further discovery will provide information necessary to establish a missing element in the case).

IV.

Finally, in view of our decision affirming the summary judgment dismissal of plaintiff's complaint, defendants' cross-motion for a protective order is rendered moot. We note, however, the judge mentioned in his amplification statement that had he denied the summary judgment motion the protective order would have issued.

The orders pertaining to plaintiff's appeal are affirmed; defendants' cross-appeal is dismissed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION