**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1734-23

TRACI WILLIS,

     Plaintiff-Appellant,

v.

THE HOUSING AUTHORITY
OF THE CITY OF CAMDEN,
VICTOR D. FIGUEROA,
KATHERYN BLACKSHEAR,
and DEBBIE PERSON-POLK,

     Defendants-Respondents.

_____

          Submitted October 16, 2025 – Decided November 19, 2025

          Before Judges Smith and Berdote Byrne.

          On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1262-20.

          Joseph P. Guzzardo (Guzzardo & Associates LLC), attorney for appellant.

          Brown & Connery, LLP, attorneys for respondents (Louis R. Lessig and Joseph D. Clifford, on the brief).

PER CURIAM

Plaintiff appeals the dismissal of her retaliatory discharge claim which alleged a violation of New Jersey's whistleblower statute, the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 to -16. Plaintiff asserts she was terminated in retaliation for reporting wrongdoings of another employee after being directed to investigate that employee by defendants. Defendants argue plaintiff was terminated for legitimate reasons, specifically because she engaged in illegal and fraudulent activities while acting as director of defendants' low-income housing program.

The trial court initially denied defendants' summary judgment motion, finding genuine issues of material fact as to whether defendants had proffered a legitimate, non-retaliatory reason for terminating plaintiff. However, the court later granted defendants' motion for reconsideration based on new evidence not available at the time of the original summary judgment motion. The court found defendants had a legitimate, non-retaliatory reason to terminate plaintiff, and plaintiff failed to produce evidence demonstrating defendants' decision was pretextual. However, the trial court did not determined whether plaintiff had established a prima facie CEPA claim.

The trial court improperly shifted the burden of production to defendants to proffer a legitimate, non-retaliatory reason for firing plaintiff without first

2

determining whether plaintiff had established a prima facie CEPA claim. Plaintiffs are required to satisfy their initial burden of establishing a prima facie claim before shifting the burden to defendants. Moreover, plaintiff has not specified the subsection of CEPA her claim is premised upon, which is integral in determining whether she has engaged in "CEPA-protected conduct" necessary for a prima facie case. Because plaintiff must establish this fact before the trial court may proceed to the subsequent burden-shifting stage available to all CEPA litigants, we are constrained to reverse and remand for additional summary judgment proceedings.

## I.

From 2000 to 2019, plaintiff was employed by the Housing Authority of the City of Camden ("HACC"). From 2010 to 2019 she was the Director of their Housing Choice Voucher Program ("HCVP"), a "Section 8" housing program tasked with coordinating low-income housing placements pursuant to the direction of the U.S. Department of Housing and Urban Development ("HUD").

In that capacity, in December 2018, plaintiff was tasked with investigating another employee for suspected misconduct, and on December 19, 2018, plaintiff emailed defendant Figueroa a Draft Notice of Disciplinary Action for that employee, which laid out her findings and referenced "confidential concerns

A-1734-23

and complaints" she had verbally relayed to Figueroa prior to sending him the draft.

Two days before plaintiff sent the draft disciplinary report to Figueroa, defendant HACC's general counsel received a tip alleging plaintiff engaged in fraudulent and illegal activity whilst acting as HCVP Director. We take the following relevant facts from a related matter, Willis v. Bd. of Rev., Dep't of Lab., No. A-3065-21 (App. Div. Nov. 19, 2024) (slip op. at 2-3):

> On December 21, 2018, HACC placed [plaintiff] on paid administrative leave while it conducted an internal investigation into alleged conflicts of interest. The investigation was prompted by HACC's receipt of a letter from Mark Willis's former spouse. She reported that while [plaintiff] was the Director of the HCV program, she was also a principal of MTW Investment Group, LLC (MTW), which received rent subsidy payments from HACC through the HCV program. The tipster also reported that after Mark Willis married [plaintiff] he continued to receive rent subsidy payments from HACC through the HCV program for various properties.
>
> The investigation revealed that [plaintiff] created MTW in May 2015. MTW began receiving rent subsidy payments from HACC through the HCV program in July 2015. Those payments continued until [plaintiff's] suspension. While [plaintiff] claimed to have transferred her interest in MTW to a third party on December 16, 2016, state records listed [plaintiff] as having an interest in MTW as late as March 2019. HACC also produced evidence that [plaintiff] was

4

listed as the party to receive local property tax bills for a parcel owned by MTW in 2019.

On March 27, 2019, at the conclusion of the investigation, HACC terminated [plaintiff]. HACC determined [plaintiff] engaged in intentional wrongdoing.

Plaintiff filed a single-count complaint on March 27, 2020, alleging her termination violated CEPA, specifically referring to her investigation into another employee's suspected wrongdoing and subsequently drafting a disciplinary report she had prepared, as the pretextual reason for her termination. Defendants moved for summary judgment, which the trial court denied on May 25, 2023, finding genuine issues of material fact as to whether defendants met their shifted burden of producing a legitimate, non-retaliatory reason for terminating plaintiff. The court noted its decision was based on our precedent of shifting the burden of production to the defendant-employer in CEPA cases once the plaintiff has established a prima facie case; however, the court did not articulate whether plaintiff did, in fact, establish a prima facie CEPA claim.

Defendants moved for reconsideration in light of new evidence unavailable at the time of the original summary judgment motion. Specifically, plaintiff had pleaded guilty to third-degree conspiracy to tamper with public records on June 21, 2023, relating to the investigation of her own wrongdoing.

5

Considering the new evidence, the trial court granted defendants' motion for reconsideration. The court found the new evidence extinguished all genuine issues of material fact as to whether defendants adequately provided a legitimate, non-retaliatory reason for terminating plaintiff. The court determined defendants had met their shifted burden of production and entered judgment in defendants' favor, dismissing plaintiff's complaint with prejudice and concluding plaintiff, as a matter of law, could not establish her termination had been otherwise pretextual in light of defendants' proffered legitimate, non-retaliatory reason. This appeal followed.

## II.

We review a trial judge's decision to grant or deny a motion for reconsideration pursuant to Rule 4:49-2 for an abuse of discretion, Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021), which occurs when "a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis,'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). Reconsideration is appropriate where "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to

appreciate the significance of probative, competent evidence." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). "Alternatively, if a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided in the first application, the [c]ourt should, in the interest of justice (and in the exercise of sound discretion), consider the evidence." D'Atria, 242 N.J. Super. at 401.

Here, the trial court's determination on reconsideration requires our review of its decision of defendants' original summary judgment motion. We review a trial court's order on summary judgment de novo and apply the same standard used by the trial court. Boyle v. Huff, 257 N.J. 468, 477 (2024). "In ruling on a summary judgment motion, a court does not 'weigh the evidence and determine the truth of the matter'; it only 'determine[s] whether there is a genuine issue for trial.'" C.V. ex rel. C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305-06 (2023) (alteration in original) (quoting Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480

(2016)). If the "competent evidential materials presented, when viewed in the light most favorable to the non-moving party, permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party" the movant is not entitled to summary judgment. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also Globe Motor Co., 225 N.J. at 480. A court should grant summary judgment "[o]nly 'when the evidence is so one-sided that one party must prevail as a matter of law.'" Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 257 (2018) (quoting Brill, 142 N.J. at 540) (internal quotation marks omitted).

CEPA "shields an employee who objects to, or reports, employer conduct that the employee reasonably believes to contravene the legal and ethical standards that govern the employer's activities." Allen v. Cape May Cnty., 246 N.J. 275, 289 (2021) (quoting Hitesman v. Bridgeway, Inc., 218 N.J. 8, 27 (2014)). In pertinent part, CEPA's anti-retaliation provision, N.J.S.A. 34:19-3, prohibits an employer from taking any retaliatory action against an employee because they engaged in any of the following protected activities:

> a. Disclose[d], or threaten[ed] to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

(1) is a violation of a law, or a rule or regulation promulgated pursuant to law . . . ; or

(2) is fraudulent or criminal . . . ;

b. Provide[d] information to, or testifie[d] before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, or another employer, with whom there is a business relationship . . . ; or

c. Object[ed] to, or refuse[d] to participate in any activity, policy or practice which the employee reasonably believes:

(1) is a violation of a law, or a rule or regulation promulgated pursuant to law . . . ;

(2) is fraudulent or criminal . . . ; or

(3) is incompatible with a clear mandate or public policy concerning the public health, safety or welfare or protection of the environment.

Although plaintiff's complaint does not expressly articulate which protected activity she claims to have engaged in that caused her termination in order to establish a prima facie CEPA case, her brief in opposition to defendants'

9

summary judgment motion[1] cites the prima facie standard for a whistleblowing claim premised on N.J.S.A. 34:19-3(c), which requires a plaintiff to establish:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003).]

If a court finds a plaintiff has established a prima facie CEPA claim, the burden shifts to the employer "to rebut the presumption of discrimination by articulating some legitimate nondiscriminatory reason for the adverse employment action." Allen, 246 N.J. at 290-91 (quoting Kolb v. Burns, 320 N.J. Super. 467, 478 (App. Div. 1999)) (internal quotation marks omitted). The inquiry does not end once the employer satisfies this burden, however, as "plaintiff has the ultimate burden of proving that the employer's proffered reasons were a pretext for the discriminatory action taken by the employer." Id.

---

[1] Whether plaintiff established a prima facie CEPA claim was argued only at the trial level, as the parties' appellate briefs exclusively addressed the burden-shifting stage of the litigation because this was the premise of the trial court's reconsideration decision on appeal.

A-1734-23

at 291 (quoting Kolb, 320 N.J. Super. at 478); see also Donofry v. Autotote Sys., Inc., 350 N.J. Super. 276, 293 (App. Div. 2001) ("Although the burden of production shifts throughout the process, the employee at all phases retains the burden of proof that the adverse employment action was caused by purposeful or intentional [retaliation]." (alteration in original) (quoting Bergen Com. Bank v. Sisler, 157 N.J. 188, 212 (1999))).

Imperatively, the burden lies with the plaintiff until she establishes a prima facie claim, and the burden-shifting occurs only upon the court's finding plaintiff has satisfied this initial step. See id. at 290-91; see also Winters v. N. Hudson Reg'l Fire and Rescue, 212 N.J. 67, 90 (2012) ("[T]he employee carries the initial burden of establishing a prim[a] facie case of retaliation" and not until then does "[t]he burden of production . . . shift[] 'to the employer to articulate some legitimate, nondiscriminatory reason' for the adverse employment action." (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973))); see also Massarano v. N.J. Transit, 400 N.J. Super. 474, 492 (App. Div. 2008) ("[O]nce plaintiff establishes a prima facie case of retaliatory discharge, the defendant must then come forward and advance a legitimate reason for discharging plaintiff." (alteration in original) (emphasis added) (quoting

Zappasodi v. State Dept. of Corrections, Riverfront State Prison, 335 N.J. Super. 83, 89 (App. Div. 2000))).

The trial court did not determine whether plaintiff had established a prima facie case, but rather issued both its orders—that is, the first order denying summary judgment, and the second order granting reconsideration and summary judgment—based on analyzing whether plaintiff's claim survived the burden-shifting stage of litigation.  Although defendants argued plaintiff had not established a prima facie case in both its summary judgment motion and motion for reconsideration, and plaintiff opposed both motions arguing she had established a prima facie case, the trial court did not address those arguments nor determine whether plaintiff satisfied any of the prongs of a prima facie CEPA claim.

Accordingly, the trial court prematurely shifted the burden to defendants to prove they had a legitimate, non-retaliatory reason for terminating plaintiff without first determining whether plaintiff had established a prima facie CEPA claim.  See Allen, 246 N.J. at 290-91.

Moreover, we are we are unable to conclude whether plaintiff established a prima facie case, even considering our de novo review, because plaintiff has not indicated what subsection of N.J.S.A. 34:19-3 she is relying upon to seek

relief. Despite citing to Dzwonar in her summary judgment opposition, which itself cites N.J.S.A. 34:19-3(c), plaintiff makes no other indication to us whether her claim is premised upon subsection (a), (b), or (c). Additionally, even if we were to accept plaintiff's claim is premised upon subsection (c), which deems the "object[ion] to, or refus[al] to participate in" an activity as protected, the core inquiry is whether plaintiff "disclosed" information to defendants, which is a protected action pursuant to subsection (a), not subsection (c), see N.J.S.A. 34:19-3(a), (c).

The Supreme Court reversed and remanded under similar circumstances, see Allen, 246 N.J. at 291, in which the plaintiff "did not clarify the statutory basis for [her CEPA] claim until the appeal was argued before [the Supreme Court]" when she indicated for the first time her claim was premised upon subsection (c). Despite this ambiguity, the trial court found the plaintiff had established a prima facie case by improperly "assum[ing] that plaintiff's conduct would constitute CEPA-protected conduct . . . if it satisfied either N.J.S.A. 34:19-3(c) or N.J.S.A. 34:19-3(a)." Ibid. In reaching this conclusion, the Supreme Court held, "[w]ith no clarification from [the] plaintiff as to the governing CEPA provision, . . . [the] plaintiff's [alleged protected activity] 'constitutes CEPA-protected conduct under N.J.S.A. 34:19-3(a),' but did not

13

review that [activity] under N.J.S.A. 34:19-3(c)." Ibid. Faced with these ambiguities, the Supreme Court concluded "it is unclear whether defendants' motion for summary judgment was decided based on the CEPA provision on which plaintiff relies" and determined remand was necessary "for additional summary judgment proceedings" to determine whether plaintiff established a prima facie case premised upon her chosen subsection of relief, N.J.S.A. 34:19-3(c).[2] Id. at 292.

As in Allen, plaintiff here has not indicated which subsection of N.J.S.A. 34:19-3 she is basing her claim on. Additionally, there is a discrepancy between her brief in opposition to summary judgment and her attorney's assertions at oral argument for summary judgment as to whether she is proceeding upon subsection (a) or (c). Because of this ambiguity, we are constrained by the holding in Allen to remand for further summary judgment proceedings wherein the trial court must make an affirmative finding as to whether plaintiff has established a prima facie CEPA claim. See 246 N.J. at 292. The trial court

---

[2] The Supreme Court did, however, affirm the trial court's summary judgment decision in part as to a separate protected activity alleged by plaintiff despite the same ambiguity, because the plaintiff's termination proceedings occurred before this separate alleged protected activity and could not, as a matter of law, have a causal connection to the adverse employment action the plaintiff suffered. See Allen, 246 N.J. at 293-95.

A-1734-23

should also clarify what subsection of N.J.S.A. 34:19-3 plaintiff is relying upon in light of the conflicting language between the summary judgment opposition and oral argument. We take no position with respect to the substantive outcome of the motion for summary judgment.

Reversed and remanded for further summary judgment proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1734-23