**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3834-23

WALTER USZENSKI,
J.H. and J.H., a minor,[1]

     Plaintiffs-Appellants,

v.

BRICK TOWNSHIP BOARD
OF EDUCATION and DONNA
STUMP,

     Defendants-Respondents.

_____

     Argued January 12, 2026 – Decided February 6, 2026

     Before Judges Sabatino, Walcott-Henderson and Bergman.

     On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1823-23.

---

[1] The initials of both the minor J.H. and the minor's parent, also identified here as J.H., are being used in this posted appellate opinion to afford greater protection to the minor's privacy. In the trial court litigation, the parent's full name had previously been identified.

Neil Mullin argued the cause for appellants (Smith Mullin, PC, attorneys; Neil Mullin, of counsel and on the briefs; Virginia A. Pallotto, on the briefs).

Anthony J. Vinhal argued the cause for respondent Brick Township Board of Education (Carmagnola & Ritardi, LLC, attorneys; Anthony J. Vinhal, of counsel and on the brief; Andrea M. Fiorica, on the brief).

Costadinos Georgiou argued the cause for respondent Donna Stump (Lenox, Socey, Formidoni, Giordano, Lang, Carrigg & Casey, LLC, attorneys; Patrick F. Carrigg, of counsel and on the brief; Stephanie J. Viola, on the brief).

PER CURIAM

In this complex case, plaintiffs appeal the trial court's June 24, 2024 order granting summary judgment dismissing claims brought under the Conscientious Employment Protection Act ("CEPA"), N.J.S.A. 34:19-1 to -16.

For the reasons that follow, we affirm the dismissal in part but remand in limited part, specifically with respect to a period of approximately three months when the defendant school board engaged in an apparent "adverse employment action" by failing to pay plaintiff Walter Uszenski, a suspended school superintendent, his salary as prescribed by N.J.S.A. 18A:6-8.3.

I.

The parties are surely familiar with the extensive factual and procedural background of this protracted dispute. Much of that background involves the

2

special needs of a minor, co-plaintiff J.H., as well as other sensitive issues. Consequently, we provide only a very brief summary to outline the factual and procedural history, which is otherwise substantially covered in the trial court's opinion.

More than a decade ago, in June 2012, defendant Brick Township Board of Education ("the BOE") hired plaintiff Walter Uszenski as the school district's Superintendent of Schools. After he assumed his duties as Superintendent, Uszenski directed that co-defendant Donna Stump[2] be demoted from her position as Director of Special Education to a lower post of Supervisor. He ordered the demotion after discovering that Stump's department had a $750,000 deficit tied to unprocessed invoices and learning that Stump allegedly had also tolerated poor performance by several child study team members, including one who supposedly had been in a so-called "no-show" job.

After receiving her demotion, Stump found out that Uszenski had prompted the district to replace her with his friend Andrew Morgan, who had a prior criminal record arising out of New York, the details of which are unimportant here. As perceived by Stump, Morgan allegedly forced her and

---

[2] We refer to Donna Stump as "Stump," even though her spouse James Stump was previously listed with her as a co-defendant. No disrespect is intended.

A-3834-23

other child study team members to approve the district's payment of exorbitant sums for Uszenski's minor relative J.H., who was then four years old, to be bussed to and receive care at an off-site daycare facility for special education services that allegedly went beyond J.H.'s then-present needs.

Stump also authored a document labeled a "Press Release" accusing Uszenski of knowing about Morgan's criminal conviction before he was hired by the district. The document got into the hands of BOE members and others, including attendees at a political event.

A bus driver reported the situation involving the minor to the Mayor, who in turn reported it to the Ocean County Prosecutor. Stump and other district employees gave information to the prosecutor and testified before the grand jury, resulting in Uszenski and the child's parent being charged in three successive indictments with official misconduct and other offenses. When the first indictment was issued in September 2015, the BOE suspended Uszenski without pay. The suspension without pay continued after a superseding second indictment was issued.

The second indictment was dismissed by a Criminal Part judge in February 2017 due to prosecutorial misconduct. As we will discuss, infra, on June 13, 2017, a third indictment ensued. During that approximate three-month

interval when Uszenski was not under indictment and no criminal charges were pending, the BOE continued to suspend Uszenski without pay. His appointment as superintendent expired in 2018 and his contract was not renewed.

Subsequently, a plea agreement with the State was negotiated in which Uszenski was admitted to pretrial intervention ("PTI"). His criminal record ultimately was expunged.

Eventually, there was an educational finding that J.H., who had been diagnosed with ADHD, was entitled to special needs preschool services. Nonetheless, the minor and the parent moved out of the school district to Pennsylvania.

With the minor and the minor's parent as co-plaintiffs, Uszenski brought the present case in the Law Division against the BOE, Stump, and other defendants. The complaint alleged a host of counts and legal theories, which eventually were dismissed, with the exception of the aforementioned CEPA claim. Along the way, Stump was dismissed from the case by the trial court without prejudice. Other defendants were also dismissed. Plaintiffs' counsel has clarified for us that the dismissal of Stump is not being contested on appeal, and that the sole focus of the present appeal is the entry of summary judgment on the CEPA claim in favor of the BOE.

A-3834-23

On the CEPA claim, Uszenski argues that he had "blown the whistle" on improprieties in the district's special needs program, and had been retaliated against by Stump, who allegedly influenced the BOE and the County Prosecutor. In its defense, the BOE asserted, among other things, that it could not be vicariously liable for any proven wrongful acts by Stump.

The trial court granted summary judgment and dismissed the CEPA claims. The court found that Uszenski had met, or at least could establish before the jury, the first two of the four required CEPA elements (discussed infra), but could not meet the third and fourth elements, namely "adverse employment action" and "proximate causation."

Plaintiffs now appeal. The BOE and Stump filed separate briefs opposing the appeal, although we need not discuss Stump's arguments since plaintiffs' counsel has clarified that that they consent to Stump's dismissal as a party defendant.

The general theme of plaintiffs' arguments on appeal is that the trial court failed to afford them all favorable inferences from the record, and that there are genuine issues of material fact a jury must resolve concerning the third and fourth CEPA elements for recovery. The BOE urges that we affirm the trial

6

court's ruling as to those latter two elements; it has not cross-appealed concerning the first two.

## II.

Summary Judgment Standards

In reviewing the summary judgment record, we apply well settled principles. Under Rule 4:46-2(c), a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "Summary judgment should be granted, in particular, 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Ibid. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

7

Applying these principles, appellate courts review the trial court's grant or denial of a motion for summary judgment de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021); Conley v. Guerrero, 228 N.J. 339, 346 (2017). When reviewing a grant of summary judgment, we use the same standard as the motion judge and consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

CEPA and Its Four Elements

Under CEPA:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a.  Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, . . . that the employee reasonably believes:
>
> > (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, . . . ; or
> >
> > (2) is fraudulent or criminal, . . . ;
>
> b.  Provides information to, or testifies before, any public body conducting an investigation, hearing or

A-3834-23

inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, . . . ; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, . . . ;

> (2) is fraudulent or criminal, . . . ; or

> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3.]

CEPA defines "[r]etaliatory action" as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). Thus, to establish a prima facie claim for a CEPA violation, a plaintiff must show that he or she: (1) "reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;" that (2) "he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19–3[(c)];" that (3) "an adverse employment action was taken against him or her;" and (4) "a causal connection exists between the whistle-blowing activity and the adverse employment

9

action." Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003) (citing Kolb v. Burns, 320 N.J. Super. 467, 476 (App. Div. 1999)).

If a plaintiff establishes those four elements, the burden then shifts to defendant to "advance a legitimate, nondiscriminatory reason for the adverse conduct against the employee." Klein v. Univ. of Med. and Dentistry of New Jersey, 377 N.J. Super. 28, 38 (App. Div. 2005) (citing Zappasodi v. State Dep't of Corrs., 355 N.J. Super. 83, 89 (App. Div. 2000)). "If such reasons are proffered, plaintiff must then raise a genuine issue of material fact that the employer's proffered explanation is pretextual." Id. at 39 (citing Bowles v. City of Camden, 993 F. Supp. 255, 262 (D.N.J. 1998)).

Here, the trial court determined that plaintiffs had set forth sufficient evidence to make a prima facie demonstration of the first two elements of a CEPA claim, and no party challenges that ruling on appeal. Plaintiffs instead argue the trial court erred in finding that they had not presented sufficient evidence with respect to the third and fourth elements: an adverse employment action, and a causal connection between the alleged whistleblower activities and the alleged adverse employment action. We address each element in turn.

A.    Adverse Employment Action

An employer's action must "have either impacted on the employee's 'compensation or rank' or be 'virtually equivalent to discharge'" in order to give rise to the level of a retaliatory action required for a CEPA claim." Klein, 377 N.J. Super. at 46 (quoting Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 360 (App. Div. 2002)). A "minor sanction" imposed by the employer "is insufficient to constitute a retaliatory action under the statute." Ibid. "Nor does the imposition of a condition on continued performance of duties in and of itself constitute an adverse employment action as a matter of law, absent evidence of adverse consequences flowing from that condition." Ibid.

The trial court found that the BOE took no adverse employment action against Uszenski because, upon his arrest, he was no longer qualified by law to work in a school district. That is correct, as to the discrete periods when charges were pending against him.

N.J.S.A. 18A:6-7.1 prohibits the employment by a board of education of any "individual" whose "criminal history record check reveals a record of conviction for any crime of the first or second degree" or any other of the enumerated offenses. "When charges are pending for a crime or any other offense enumerated in this section, the employing board of education shall be notified that the candidate shall not be eligible for employment until the

commissioner has made a determination regarding qualification or disqualification upon adjudication of the pending charges."  N.J.S.A. 18A:6-7.1(f).

Here, the New Jersey Department of Education ("DOE") notified the BOE of Uszenski's disqualification and the BOE at that time complied with the legal requirement to suspend him.  The trial court did not err in determining that this was not an adverse employment action by the BOE for the periods when Uszenski was under indictment and charges were pending against him.

Uszenski argues that the BOE "could have, but failed to, suspend him with pay" for the periods in which he was not under indictment.  N.J.S.A. 18A:6-8.3 addresses this question specifically, and provides that:

> Any employee or officer of a board of education in this State who is suspended from his employment, office or position, other than by reason of indictment, pending any investigation, hearing or trial or any appeal therefrom, shall receive his full pay or salary during such period of suspension, except that in the event of charges against such employee or officer brought before the board of education or the Commissioner of Education pursuant to law, such suspension may be with or without pay or salary as provided in chapter 6 of which this section is a supplement.
>
> [(Emphasis added).]

Here, the BOE suspended Uszenski with pay until he was indicted at the end of September 2015, at which time he was suspended without pay until the expiration of his contract on June 30, 2018. However, the BOE was free to reinstate Uszenski's pay after the superseding indictment was dismissed by the Criminal Part judge on February 28, 2017, and before Indictment No. 17-06-907-I was returned on June 13, 2017, but it did not. Moreover, the language of N.J.S.A. 18A:6-8.3 expressly directs that the school district "shall" pay the suspended school official if no indictment is pending.

The reference in the statute to "charges . . . brought before the board of education or the Commissioner of Education" relates to tenure charges and is not at issue here since Uszenski did not have tenure and no such charges were ever brought before the BOE or DOE. See, e.g., N.J.S.A. 18A:6-10 (which addresses the "[d]ismissal and reduction in compensation of persons under tenure" in a "public school system"). Thus, once the indictment was dismissed, Uszenski's suspension became "other than by reason of indictment" and he was entitled to "receive his full pay or salary" under N.J.S.A. 18A:6-8.3. See Slater v. Bd. of Educ. of Ramapo-Indian Hills Reg. High Sch. Dist., 237 N.J. Super. 424, 426 (App. Div. 1989) (under N.J.S.A. 18A:6-8.3, "a tenured [public school]

13

employee may be suspended without pay only if indicted or if tenure charges have been preferred and certified to the Commissioner of Education").

Therefore, the BOE's failure to pay Uszenski for the period from February 28 to June 13, 2017, appears to qualify under element three as an adverse employment action under CEPA. See Klein, 377 N.J. Super. at 46-47 (employer's action that impacted employee's compensation constitutes adverse employment action under CEPA).

We do note that plaintiffs essentially and incorrectly equate "adverse employment action" under CEPA with "any adverse consequence." Uszenski was indicted by the County Prosecutor, who the BOE did not control. These indictments were not "employment" actions. The pertinent laws require a school superintendent to be suspended and not paid once he or she is indicted. But, as we noted above, Uszenski's continued suspension without pay during the roughly three-and-a-half month interval between the second and third indictments does seem to qualify as an adverse employment action. That said, plaintiffs' contention that the entire period of suspension is a compensable "adverse employment action" under CEPA is untenable. That legal conclusion governs, regardless of whether, as plaintiffs hypothesize, the BOE could

14

somehow be held vicariously liable for Stump's allegedly wrongful conduct that plaintiffs contend produced Uszenski's criminal prosecution.

We next turn to the element of proximate causation.

B.  Causal Connection

In order to establish a causal connection between the whistleblowing activity and the adverse employment action, a CEPA plaintiff must "prove by a preponderance of the evidence that his protected, whistleblowing activity was a determinative or substantial, motivating factor in defendant's decision to [adversely impact] his employment—that it made a difference." Donofry v. Autotote Sys., Inc., 350 N.J. Super. 276, 296 (App. Div. 2001).

Our Supreme Court has held that "a direct causal link between the complaint by the employee and the retaliatory action of the employer" is not required. Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 558 (2013). Rather, the requirement of a causal connection between the whistleblowing activity and the adverse employment action "can be satisfied by inferences that the trier of fact may reasonably draw based on circumstances surrounding the employment action." Maimone v. City of Atl. City, 188 N.J. 221, 237 (2006) (citing Est. of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000)).

A-3834-23

"The temporal proximity of employee conduct protected by CEPA and an adverse employment action is one circumstance that may support an inference of a causal connection." Ibid. However, mere assertions of a causal connection are insufficient to make out a prima facie case sufficient to overcome a summary judgment motion. See Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019) ("'[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome' a motion for summary judgment." (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005))).

The whistleblowing activities plaintiffs allege here are that Uszenski exposed a no-show job to the BOE and that he recommended Stump be demoted after her mishandling of $750,000 in unpaid special services invoices was uncovered. Plaintiffs further argue Uszenski provided sufficient evidence of a causal connection by providing "documentary and testimonial evidence" that "but for Stump's false statements" to the Prosecutor's Office, "the case against Uszenski never would have been submitted to the grand jury." According to plaintiffs, Stump lied in the "Press Release" in July 2013 when she claimed that Uszenski was aware of Morgan's criminal conviction before Morgan was hired, and also lied during her March 2015 interview with the prosecutor when she described J.H.'s individualized education program ("IEP") as fraudulent.

Plaintiffs contend that the other BOE employees who also testified regarding the inappropriateness of J.H.'s IEP lied as well.

Plaintiffs further assert that the BOE is vicariously liable for Stump's actions as she was a supervisor who was acting within the scope of her employment when she disparaged Uszenski in the manner that she did. In their reply brief on appeal, plaintiffs also assert what employment law cases have described as a "cat's paw" theory of vicarious liability, a scenario in which a lower-level employee with retaliatory motives has influenced upper-level decision-makers to take an adverse employment action against a plaintiff. See Meade v. Twp. of Livingston, 249 N.J. 310, 334-36 (2021) (explaining "cat's paw" liability principles as applied in New Jersey).

In analyzing the causation issue, we must recognize the limited scope of the "adverse employment action" that remains for consideration, i.e., the three-month unpaid interval between the second and third indictments of Uszenski. Unfortunately, the present record is sparse and incomplete concerning that interval, and the trial court did not address the period from February to June 2017 specifically in determining that Uszenski had not demonstrated any adverse employment action.

As a result, the record before this court is inadequate regarding the BOE's reasoning underlying its failure to reinstate Uszenski's pay in February 2017. The record contains a March 1, 2017 article from the Asbury Park Press in which Uszenski's then-attorney is quoted as saying that "he will seek to have his client reinstated" after the Criminal Part's dismissal of the indictment, but it is unclear whether he actually did so and, if so, what the BOE's response to this was. It is even unclear from the record who the BOE members were during this time period.

The appellate record contains portions of the deposition testimony of BOE members Sharon Cantillo and John Barton. Cantillo was not asked during her deposition any questions regarding the BOE's failure to reinstate Uszenski's pay upon dismissal of the superseding indictment. Barton was asked questions about the BOE's actions after the dismissal of the indictment but denied discussing that topic with anyone on the BOE or attending any BOE meetings where that topic was likewise discussed. Barton further did not recall the BOE doing anything after they received a tort claims notice from Uszenski in April 2017.

However, Barton also testified that he was friendly with Stump and her spouse, who were his neighbors, and believed that Stump should have been permitted to keep her job as Director of Special Services despite the financial

irregularities that were uncovered. Barton further testified that his wife was a special education teacher in the Brick school system, and Stump had been her supervisor. Barton's wife's work location was changed during Uszenski's tenure, but Barton professed to not know whether she was happy about that change.

Barton testified that he generally abstained from voting on issues relating to Uszenski's contract because of the conflict of interest. However, he did vote to suspend Uszenski with pay in May 2015 under the doctrine of necessity. He testified that he concluded that if the criminal charges were dismissed or resolved in Uszenski's favor, then he would be eligible to regain his employment or receive backpay.

Although Barton's testimony makes clear that he did not agree with Uszenski's decision to demote Stump, this is not sufficient in and of itself to demonstrate a causal connection between Uszenski's whistleblower activities and the BOE's action in failing to reinstate his pay. However, without the development of a fuller record, it is unclear whether there is any evidence adduced in discovery that demonstrates such a causal connection. It is similarly unclear whether the other BOE members as of February 2017 were deposed or, if they were, whether they were specifically questioned about the failure to reinstate Uszenski's pay.

Because there is nothing in the appellate record relating to the BOE's reasoning for its failure to reinstate Uszenski's pay in February 2017, and because this specific issue of alleged retaliation was not addressed by the trial court, we conclude a remand is necessary. On remand, the trial court must specifically address that issue. To that end, the trial court shall have the discretion to permit additional reasonable discovery concerning the issue, and to allow the parties to re-argue the summary judgment motion. As part of the reexamination of the issue, the trial court shall also make specific findings concerning plaintiffs' "cat's paw" theory of liability, which was apparently presented in the previous motion practice but not specifically addressed in the trial court's summary judgment decision. Likewise, the questions concerning vicarious liability should be re-visited, insofar as whether plaintiffs can show that Stump's conduct might be reasonably found by a jury to be a "substantial factor" in producing the failure to pay Uszenski during the approximate three-month interval. We recognize this is a substantial reduction of the scope of plaintiffs' asserted CEPA claims, but one that is nevertheless warranted by the law and this record.

In sum, we vacate the trial court's determination that there was no adverse employment action, as the court erred in failing to determine that Uszenski's

suspension without pay between February and June 2017 can qualify as an adverse employment action. In addition, the trial court, with a suitably developed record, shall reconsider whether plaintiffs have demonstrated a prima facie causal connection between Uszenski's whistleblowing activities and that discrete adverse employment action. The trial court shall conduct a case management conference within thirty days to plan the remand.

Affirmed in part, vacated in part, and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3834-23